LECHMERE TIRE & SALES CO. *vs.* JERALD D. BURWICK.

Middlesex. October 6, 1971. — January 4, 1972.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Contract,* Credit card, Construction, Validity.

An application for a credit card reciting that the applicant agreed "to be responsible for all purchases through its use until surrendered or until the company |issuing the card| has been notified of its loss or theft in writing" was a contract to be construed strictly against the issuer, in whose behalf it was drafted, and doubts as to its interpretation and meaning were to be resolved in favor of the applicant. |720–721|

An issuer of a credit card, or one extending credit on the basis of the card, must use not only good faith, but also due care to ascertain whether a person using the card is its proper holder or one authorized to use it. |721–725|

CONTRACT. Writ in the Third District Court of Eastern Middlesex dated November 22, 1967.

The action was heard by *Feloney, J.*

*Jerald D. Burwick,* pro se.

*Ira A. Nagel (Gerald H. Van Dam* with him) for the plaintiff.

CUTTER, J. ˙ The plaintiff (Lechmere) seeks to recover for merchandise sold to a customer who presented Mr. Burwick's lost or stolen credit card. There was a finding for Lechmere in the District Court. Mr. Burwick takes this appeal from a decision of the Appellate Division sustaining Lechmere's position. The evidence is summarized from the report of the District Court judge.

On April 30, 1964, Mr. Burwick, an attorney and certified public accountant, signed a printed credit card application provided by Lechmere, on which appeared the following:

"(I) We agree to surrender credit plate on request and to be responsible for all purchases through its use until surrendered or until the company has been notified of its loss or theft in writing."

After he had signed this application, Burwick received a credit card which contained a space for his signature. He signed the card. On many occasions he and his wife used it to obtain merchandise from Lechmere.

About October 11, 1967, Mr. Burwick received from Lechmere a statement showing charges of $153.22, with attached sales slips. Mr. Burwick then discovered that his signature had been forged on the sales slips and that his credit card was missing.

Mr. Burwick at once orally notified Lechmere. Lechmere's representative told him that additional charges had been made on his credit card and that the total charges then amounted to $611.78, arising from about fifteen separate transactions. Mr. Burwick had not made any of these purchases nor had he authorized anyone to do so. On October 17, 1967, he notified Lechmere in writing that the card was missing.

The signatures on several of the forged sales slips were misspelled. Mr. Burwick admitted that although he had signed the credit application and the credit card "Jerald D. Burwick," signatures in fact signed by him on sales slips were not always clear and had not always been in precisely the same form. On occasion, he had signed "J. Burwick" and at other times he had signed his whole name. One earlier sales slip was signed "D. Burwick," probably by his wife, Deborah Burwick.

Evelyn Post, Lechmere's financial officer, testified that for amounts larger than $15, there was approval from the credit department by telephone, but credit personnel did not see the sales slips. Mrs. Post also stated that sales personnel are not instructed to, and usually do not, compare signatures on purchase slips with those on credit cards.

At the close of the evidence, Mr. Burwick made thirteen

requests for rulings of which only four need be quoted. These (and the judge's disposition of them) are set out in the margin.[1]

1. This case arose before the enactment of St. 1968, c. 394, § 1, inserting in the General Laws, the provisions of c. 255, § 12E,[2] dealing with the liability of credit card-holders, whose cards are lost or stolen, for purchases made by the use of the cards. Thus, § 12E has no application to these events in 1967, except that the 1968 statute does show appropriate legislative concern about consumer protection in this area, and thus is some indication of the trend of public policy.

2. The District Court judge correctly ruled, in accordance with Mr. Burwick's request (no. 2, fn. 1), that the credit card application was an "adhesion" contract to be con-

---

[1] These requests were: "1. A credit card issuer, as . . . matter of law, owes a duty of care to its card holders to ascertain the identity of a user of the credit card. . . . 2. Where a contract is an 'adhesion' . . . contract, wherein the person executing same has no choice as to its content other than to accept or reject the contract in its entirety then . . . the . . . contract is strictly construed against the . . . drawer . . . . 7. Where the defendant is answerable for the wrongdoing of another, then, as . . . matter of law, the plaintiff owes the defendant a duty of reasonable care, because the defendant is a 'gratuitous surety.' . . . 10. The credit card issuer owes the card holder . . . a duty of reasonable care to protect the . . . holder from unnecessary charges, and the card holder . . . [can]not be held . . . until such due care is shown." The District Court judge ruled as follows on these requests: "1. Denied. I rule that the issuer of a credit card owes a duty to the card holder, to act in good faith in accepting the card when goods are obtained in a credit transaction. I find that the plaintiff and its employees acted in good faith in this case. 2. Allowed. See other rulings. . . . 7. Denied. I rule that the parties are bound by the terms of their contract and that the further duty of the store is to act in good faith in delivering goods to the person who presents a credit card. . . . 10. Denied. I rule that the obligations are as stated in the previous rulings."

[2] The provisions of § 12E (which would now apply in similar circumstances) read (emphasis supplied): "A provision imposing liability on a cardholder for the unauthorized use of a credit card shall be effective only if the card is an accepted credit card, the *liability imposed is not in excess of* . . . [*$100*], the card issuer gives adequate notice to the cardholder of the potential liability, the unauthorized use occurs before the cardholder has notified the card issuer of the loss or theft of the card or of any unauthorized use, *and the card issuer has provided a method whereby the user of the credit card can be identified as the person authorized to use it*, including . . . a place on the card for the photo or signature of the holder. Except as hereinbefore provided, a cardholder incurs no liability from the unauthorized use of either an accepted or unaccepted credit card." The terms "accepted credit card" and "adequate notice" in § 12E are given a somewhat special meaning. See 1968 House Docs. Nos. 33, 37, 4412.

strued strictly against Lechmere in whose behalf it had been drafted. See *Wright* v. *Commonwealth*, 351 Mass. 666, 673, and cases cited. See also *King* v. *Prudential Ins. Co.* 359 Mass. 46, 50; Restatement 2d: Contracts (Tent. draft No. 5, March 31, 1970), § 232.[3] We do not regard the agreement as having been so unconscionable as to require that it be not enforced (cf. *Williams* v. *Walker-Thomas Furniture Co.* 350 F. 2d 445 [D.C. Cir.]). We merely hold that all doubts as to its interpretation and as to the meaning of the card itself are to be resolved in favor of the applicant for the card.

3. The application did not plainly state the effect or purpose of the space for the signature upon the credit card. As a practical matter it provided a method of checking the identity of a customer presenting the card. A customer signing the card in the space provided reasonably could think that Lechmere's salesmen would check the identity of persons using the card, at least to the extent of comparing the signature on a sales slip with that on the card. The card presumably was issued to increase Lechmere's business, as well as for the customer's convenience, and the customer could fairly expect Lechmere to use due care to prevent its use by imposters. It is strong evidence of Lechmere's negligence that its employees failed to make such a comparison in connection with fifteen separate transactions involving improper use of Mr. Burwick's card.

4. There has been a division of authority in cases like this one. There are no controlling decisions in Massachusetts. Some cases elsewhere, in circumstances largely dis-

---

[3] In a sense the agreement in the application by which Lechmere attempted to impose liability upon the customer for loss (because of use of a lost or stolen credit card) bears some analogy to a provision attempting to exculpate it from the consequences of its own negligence. Such agreements are not viewed with favor and, if as we think, Lechmere as issuer of the credit card had a duty of care to Mr. Burwick, the provision should be construed against it. There is every reason of public policy for protecting consumers from contractual provisions, not brought home to them, which are or may be unconscionable. See Corbin, Contracts, § 1376; Prosser, Torts (4th ed.) § 68; Williston, Contracts (2d ed.) § 1751B. Compare the policy expressed in G. L. c. 106, § 2–302. Compare also *Dill* v. *Boston Safe Deposit & Trust Co.* 343 Mass. 97, 100.

tinguishable, have permitted, to some extent, enforcement of the agreement subjecting the cardholder to liability for unauthorized purchases prior to notice to the issuer of loss of the card. See *Texaco, Inc.* v. *Goldstein*, 34 Misc. 2d (N. Y.) 751, 756 (Mun. Ct., City of New York — general credit card), affd. 34 Misc. 2d 751. See also *Uni-Serv Corp.* v. *Vitiello*, 53 Misc. 2d (N. Y.) 396, 398 (Civ. Ct., City of New York), where, however, there was no reference to any signature requirement; *Magnolia Petroleum Co.* v. *McMillan*, 168 S. W. 2d 881, 882 (Tex. Civ. App.) (card negligently lent by holder); *Duke* v. *Sears, Roebuck & Co.* 433 S. W. 2d 919 (Tex. Civ. App.); and *Sears, Roebuck & Co.* v. *Duke*, 441 S. W. 2d 521 (Tex. Supr. Ct.), *S. C. Duke* v. *Sears, Roebuck & Co.* 446 S. W. 2d 886 (Tex. Civ. App.), which allow enforcement unless the "circumstances would raise a question in the mind of a reasonable seller." Compare *Allied Stores of N. Y. Inc.* v. *Funderburke*, 52 Misc. 2d (N. Y.) 872, 877–879 (Civ. Ct., City of New York).

In other cases, the issuer has been held to a duty of care, on various theories, including that the cardholder is made by the agreement essentially the guarantor of a wrongful user of the card and thus is entitled to have his obligation strictly construed. *Gulf Ref. Co.* v. *Williams Roofing Co.* 208 Ark. 362, 368–369 (card marked, "Good for Truck Only," negligently disregarded by sales of items for a passenger automobile). *Union Oil Co. of Cal.* v. *Lull*, 220 Ore. 412, 430–437 (imposing the burden of proving that reasonable inquiry as to identity has been made on the person extending credit). See *Humble Oil & Ref. Co.* v. *Waters*, 159 So. 2d 408, 410 (Ct. of App. La.); note, 77 Yale L. J. 1418, 1419–1423; note, 43 N. C. L. Rev. 416; annotation, 15 A. L. R. 3d 1086.

We conclude that the preferable rule is that requiring the issuer of a credit card, or one extending credit on the basis of the card, to use due care to ascertain that the person using the card is its proper holder or one authorized to use it. The obligation is not merely to use good faith, as

the District Court judge ruled. The use of due care in the circumstances also is necessary.

We perceive nothing inconsistent with our view in *Polonsky* v. *Union Fed. Sav. & Loan Assn.* 334 Mass. 697, 701. That case (in which there was no evidence that the bank acted either negligently or without good faith) merely held that an exculpatory provision in a savings passbook protected the bank, "using reasonable care and in good faith [when] it paid the money" to an imposter presenting the book.

The judge (see fn. 1) should have ruled in accordance with Mr. Burwick's first, seventh, and tenth requests. Despite the evidence warranting the conclusion that Lechmere was negligent in failing to make any comparison of the signature on the card with the signatures on the sales slips, the issue of Lechmere's due care must be decided by the trier of the fact.

5. The order of the Appellate Division dismissing the report is reversed. The finding for the plaintiff is to be vacated. There is to be a new trial.

*So ordered.*