BONNIE BURT & others[1] *vs.* STELLA J. MEYER, executrix.

Hampshire.  February 3, 1987. — June 4, 1987.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Damages*, Wrongful death, Punitive, Distribution.

An award of punitive damages, recovered in a wrongful death action under
    G. L. c. 229, § 2, and not allocated by the jury's verdict among the
    surviving spouse and children of the decedent, was to be considered
    part of the decedent's estate and not to be distributed according to the
    provisions of G. L. c. 229, § 1, which apply to awards of compensatory
    damages only. [187-190]
The judge who allowed an executrix's account providing for distribution
    of damages recovered in an action under G. L. c. 229, § 2, for the
    testator's wrongful death, did not err in approving distribution of the
    compensatory damages award in accordance with the jury's verdict rather
    than pursuant to the statutory formula set forth in G. L. c. 229, § 1 (3).
    [190-191]

PETITION for probate filed in the Probate Court for the county
of Hampshire on September 30, 1976.

The case was heard by *Sean M. Dunphy*, J., and a question
of law was reported by him to the Appeals Court. The Supreme
Judicial Court on its own initiative transferred the case from
the Appeals Court.

*Harry L. Miles* for the executrix.

*Benjamin A. Barnes* (*Edward M. Lee* with him) for Bonnie
Burt & others.

LIACOS, J.   At issue in this case is the distribution of moneys
recovered pursuant to a judgment for compensatory and puni-
tive damages pursuant to G. L. c. 229, § 2 (1984 ed.), the
wrongful death statute.

[1] Earl J. Meyer, Jr., Nora Croteau, and Steven S. Meyer.

On December 21, 1981, a jury in the Superior Court returned a verdict in a wrongful death action (the *Meyer* wrongful death action) brought by Stella J. Meyer, executrix of the estate of Earl J. Meyer, against Leo S. Newman and others. The jury found that negligence on the part of the defendant and third-party defendants[2] was the proximate cause of the death[3] of Earl J. Meyer, the late husband of Stella Meyer. In response to special questions, the jury assessed $174,000 in compensatory damages for the benefit of Stella Meyer (widow).[4] Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). The jury also assessed $20,000 for the benefit of each of the decedent's four children by a previous marriage, Bonnie Burt, Earl J. Meyer, Jr., Steven Meyer, and Nora Croteau (children). Finding the defendant Leo S. Newman grossly negligent in his medical treatment of the deceased, the jury awarded punitive damages of $200,000.[5] No recipient was specified for the punitive damages.

The decedent had died testate. In his will, he left to his widow all property, both real and personal, owned by him at his death. He further stated, "I make no provision in this Will for my children . . . ." The widow, as executrix, commenced proceedings in the Probate Court to allow her first and second and final accounts of the estate. The children filed objections to both accounts. Mass. R. Dom. Rel. P. 72. Their primary objection was to the proposed distribution of the compensatory

---

[2] Barber-Colman Company and Sybron Corporation.

[3] Defendant Leo S. Newman was found negligent in his duty as a physician in administering an angiographic procedure to Earl J. Meyer on September 7, 1976, at Holyoke Hospital. The third-party defendant, Barber-Colman Company, was found negligent in its role as developer, manufacturer, and supplier of the automatic angiographic injector used at the Holyoke Hospital since 1972. The third-party defendant, Sybron Corporation, was found negligent in its role as successor to Barber-Colman Company's injector business.

[4] The damages assessed for the benefit of Stella Meyer included $58,000 for the loss of the reasonably expected net income of the decedent and $116,000 for the loss of consortium. Each of the four children was awarded $20,000 for loss of companionship and society. They received nothing for the loss of reasonably expected net income as a result of the decedent's death.

[5] The jury also awarded $1,913 for reasonable funeral and burial expenses. See G. L. c. 229, § 2.

damage award[6] pursuant to the jury's verdict, rather than pursuant to the statutory scheme set forth in G. L. c. 229, § 1 (3) (1984 ed.). They also claimed a share of the punitive damages in accordance with the same statutory provision.

On December 18, 1985, a probate judge rendered a decision approving a distribution of compensatory damages awarded under G. L. c. 229, § 2, in accordance with the jury's verdict. The children appealed. Pursuant to G. L. c. 215, § 13 (1984 ed.), and Mass. R. Civ. P. 64, 365 Mass. 831 (1974), the probate judge reserved and reported to the Appeals Court the following question: "Does G. L. c. 229, § 2, require the distribution of punitive damages awarded in a wrongful death action (1) to the estate of the decedent, (2) according to the same ratio as established by the jury in awarding compensatory damages, OR (3) pursuant to the applicable statutory share set forth in § 1 of c. 229?"

We transferred the case to this court on our own motion. As to the reported question, we hold that G. L. c. 229, § 2, requires the distribution of punitive damages in a wrongful death action to the estate of the decedent. We affirm the probate judge's decision to uphold the distribution of the compensatory damages in accordance with the jury's verdict in the wrongful death action.

1. *Punitive damages.* The children argue that the punitive damages awarded by the jury should be distributed according to the statutory standards set forth in G. L. c. 229, § 1, namely one-third to the widow and two-thirds to the four children.

General Laws c. 229, § 2, as amended by St. 1979, c. 164, § 1, states in pertinent part: "A person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person . . . shall be liable in damages in the amount of: (1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered, as provided in section one, including but not limited

---

[6] After the action was commenced, the case against other medical persons was settled for $120,000; that amount was deducted from the jury's verdict as to compensatory damages.

to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered; (2) the reasonable funeral and burial expenses of the decedent; (3) punitive damages in an amount of not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant . . . ."[7]

The jury in the *Meyer* wrongful death action did not allocate its punitive damage award. General Laws c. 229, § 2, provides no guidance as to the appropriate distribution of punitive damages.

At least one court has commented that it "know[s] of no Massachusetts cases or legislative history which shed light on the purposes animating the punitive damage provision" of G. L. c. 229, § 2. *Schulhof* v. *Northeast Cellulose, Inc.*, 545 F. Supp. 1200, 1206 (D. Mass. 1982). There is authority for the proposition that the purpose of punitive damages under § 2 is to punish the defendant, not to restore the plaintiffs. *Sibley* v. *KLM-Royal Dutch Airlines*, 454 F. Supp. 425, 428 (S.D.N.Y. 1978). As one commentary put it, "Now [following enactment of a basic statutory reform in 1973] Massachusetts has a statute which provides for true punitive damages. Since it no longer must attempt to compensate beneficiaries by use of 'punitive' damages, it may now use punitive damages to truly punish the wrongdoer." Zabin & Connolly, The New Wrongful Death

---

[7] The "section one" of G. L. c. 229, referred to in this quoted text, provides for damages to be assessed with regard to the culpability of the defendant and recovered by the executor or administrator of the deceased person "to the use of the following persons and in the following shares: — (1) If the deceased shall have been survived by a wife or husband and no children or issue surviving, then to the use of such surviving spouse. (2) If the deceased shall have been survived by a wife or husband and by one child or by the issue of one deceased child, then one half to the use of such surviving spouse and one half to the use of such child or his issue by right of representation. (3) If the deceased shall have been survived by a wife or husband and by more than one child surviving either in person or by issue, then one third to the use of such surviving spouse and two thirds to the use of such surviving children or their issue by right of representation. (4) If there is no surviving wife or husband, then to the use of the next of kin."

Act in Massachusetts Steps into the Twentieth Century, 58 Mass. L.Q. 345, 371 (1973). But see J.R. Nolan, Tort Law § 334 (1979). This is consistent with the general proposition that "[t]he purposes underlying the allowance of punitive damages . . . are punishment of the defendant and deterrence of future wrongdoing." *Schulhof* v. *Northeast Cellulose, Inc.,* *supra* at 1206, quoting *In re Air Crash Disaster near Chicago, Ill., on May 25, 1979,* 644 F.2d 594, 613 (7th Cir.), cert. denied, 454 U.S. 878 (1981). *Valcourt* v. *Hyland,* 503 F. Supp. 630, 639 (D. Mass. 1980). Restatement (Second) of Torts § 908 (1979). "Such damages are not awarded to compensate the plaintiff." *Freeman* v. *World Airways, Inc.,* 596 F. Supp. 841, 846 (D. Mass. 1984).

The language of G. L. c. 229, § 2, supports the allocation of punitive damages in a manner other than that set forth in § 1 (3). Only the first clause of § 2 limits recovery to a particular class of persons. It provides for recovery of compensatory damages by "the persons entitled to receive the damages recovered" and limits that class to those persons "as provided in section one." Neither of the other two coordinate clauses which concern funeral expenses and punitive damages is so limited. A fair reading of § 2 therefore suggests that the Legislature intended the limiting phrase "as provided in section one" to apply to compensatory damages but not to funeral expenses or to punitive damages.

This interpretation comports with the differing concerns animating the award of compensatory and punitive damages. As the Appeals Court noted in *Guy* v. *Johnson,* 15 Mass. App. Ct. 757, 758 (1983), "the fair [monetary] value of the decedent to those entitled to recover" measures the extent of compensatory damages. The existence of a person or persons damaged by the decedent's death is thus a precondition for the award of compensatory damages. If no one suffers damage as a result of the death, the tortfeasor escapes liability for compensatory damages. The second clause, providing for reasonable funeral and burial expenses, makes no reference to intended beneficiaries, as such expenses become debts of the decedent's estate regardless of the existence or identities of beneficiaries.

See, e.g., G. L. c. 193, § 14 (1984 ed.), and G. L. c. 198, § 1 (1984 ed.).

The omission in the third clause of § 2 of any reference to § 1 makes sense with regard to establishing liability for punitive damages. If the purposes of punitive damages are to punish the wrongdoer and to deter similar conduct in the future, *Valcourt* v. *Hyland, supra* at 639, the assessment of punitive damages should not depend on the existence of a particular class of heirs. The nature of the tortfeasor's conduct, not the existence of specified beneficiaries, should be the test. See *Freeman* v. *World Airways, Inc., supra.* Punitive damages essentially constitute a windfall to punish the tortfeasor, not an effort to recompense particular harmed individuals. The damages should go to the decedent's estate, and the will of the deceased, the individual whose death resulted from the tortfeasor's gross negligence, should prevail. In this case, the deceased sought to leave all to his widow and nothing to his children. That disposition is in accord with the purposes of punitive damages. Accordingly, we answer the reported question as follows: Punitive damages awarded in the wrongful death action are to be considered part of the decedent's estate.[8]

2. *Compensatory damages.* The children argue that the probate judge erred by approving the distribution of compensatory damages in accordance with the jury verdict. They assert that G. L. c. 229, § 2, requires distribution of compensatory damages according to the statutory formula set forth in § 1 (3) of that statute; in other words, one-third to the surviving spouse and two-thirds to the surviving children. Thus, they say that the Superior Court jury's function was solely to assess the pecuniary loss to the widow and the children, but that the

---

[8] Citing *Sullivan* v. *Gaudette*, 344 Mass. 307 (1962), *Maltzman* v. *Hertz*, 336 Mass. 704 (1958), and *Arnold* v. *Jacobs*, 316 Mass. 81 (1944), the children argue that awarding punitive damages to the estate amends the statute by judicial act and ignores our case law. We disagree. The Legislature has amended the wrongful death statute significantly since those cases were decided. In fact, the provisions of G. L. c. 229, § 2, were completely rewritten as part of a "basic statutory reform in 1973 (by St. 1973, c. 699)." *Guy* v. *Johnson, supra* at 758. We need not follow interpretations of statutory provisions which have been superseded by later amendment.

statute (G. L. c. 229, § 1) governs the distribution of moneys recovered under the verdict.

In ruling on the allocation of compensatory damages, the probate judge stated: "In the *Meyer* wrongful death action, the special questions posed to the jury regarding compensatory damages and the jury's subsequent assessment of damages comport entirely with [the Appeals Court's] interpretation of § 2 [in *Guy* v. *Johnson, supra*]."[9] The probate judge therefore declined to disturb the jury's compensatory damage award.

We agree with the probate judge. We think he applied correctly the principle enunciated in *Guy* v. *Johnson, supra* at 761, namely that § 1 determines only the "presumptive takers" of compensatory damages. General Laws c. 229, § 2, refers to the class of presumptive takers specified in § 1, but provides recovery for "*the fair monetary value* of the decedent to the persons entitled to receive the damages recovered" (emphasis supplied). The issue of fair monetary value has been settled by the jury, and the children "cannot justly claim that the decedent had any monetary value for [them]," *Guy* v. *Johnson, supra*, beyond the jury's award.[10]

The judgment of the probate judge as to compensatory damages is affirmed. The reported question is answered as follows:

---

[9] Compare the prior language of G. L. c. 229, § 2, as added by St. 1949, c. 427, § 3, which required moneys recovered to be "*distributed* as provided in section one" (emphasis supplied). Similar language was included in St. 1965, c. 683, § 1. The absence of such language in c. 229, § 2, confirms the analysis of the present statute in *Guy* v. *Johnson*.

[10] The children maintain that they object not to the *assessment*, but rather to the *distribution*, of damages pursuant to the jury questions.

As we have stated, it seems illogical at best to suppose that the Legislature intends that a jury should determine damages based on the pecuniary loss sustained by the widow and children, but then disregard that analysis and allocate the damage award on the basis of statutorily defined shares. We decline to adopt such a rule. See *Guy* v. *Johnson, supra* at 761.

We note also that there is nothing in the record to indicate that an objection was made in the wrongful death action to the special questions put to the jury. The probate judge found that an attorney for the children had participated in the wrongful death action "for the purpose of protecting his clients' interests."

General Laws c. 229, § 2, requires distribution of punitive damages to the estate of the decedent.

*So ordered.*