GREGORY A. SANTOS & another[1] vs. LUMBERMENS
MUTUAL CASUALTY COMPANY.

Plymouth. March 8, 1990. - July 16, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Insurance*, Motor vehicle insurance, Underinsured motorist, Construction
    of policy, Subrogation. *Damages*, Wrongful death, Loss of consortium,
    Punitive. *Statute*, Construction. *Conscious Pain and Suffering. Public
    Policy. Contract*, Unconscionability. *Words*, "Per person."

Where each of two automobile insurance policies issued by an insurance
    company to two policyholders, one listing a husband as policyholder on
    the coverage selection page and the other listing his wife, provided
    $100,000 maximum per person underinsurance coverage, for which
    each named insured paid a separate premium; where each policy consti-
    tuted a separate obligation by the insurance company to pay up to the
    stated coverage amounts in the event of an accident to a covered per-
    son; and where, at the time of the accident, G. L. c. 175, § 113L, did
    not prohibit "stacking" the underinsurance benefits of two separate pol-
    icies, the coverage here being purely optional and thus entirely a matter
    of contract, nothing prohibited the policyholders from stacking their
    benefits under each policy. [74-76]
In an action for declaratory relief arising out of a fatal motor vehicle acci-
    dent, commenced by the administrators of the decedent's estate for pur-
    poses of determining the amounts of underinsurance coverage available
    under the 1984 and 1985 Massachusetts automobile insurance policies
    belonging to the decedent's father and mother, respectively, this court
    concluded that there were three separate injured "persons" to whom
    the insurance company was obligated under the 1984 policy: (1) the
    decedent's father, for his "consortium-like" claims, (2) the decedent's
    mother, similarly, for her "consortium-like" claims, (3) the estate, for
    the claims of punitive damages, funeral and burial expenses, and con-
    scious pain and suffering of the decedent; however, with respect to the
    decedent's mother's 1985 policy, which applied a "per person" limita-
    tion to injuries to one or more persons, which result from bodily injury

---

[1]Renee Santos, as co-administrators of the estate of Gregory A. Santos,
II.

to any one person in any one accident, there was but one injured "person." [76-79]

In an action arising out of a fatal motor vehicle accident involving the recklessness or gross negligence of an underinsured motorist, the underinsurance provisions of the applicable 1984 and 1985 Massachusetts automobile insurance policies did not provide coverage for an award of punitive damages made under G. L. c. 229, § 2 (3). [80-84]

In an action arising out of a motor vehicle accident involving the recklessness or gross negligence of an underinsured motorist, it was neither unconscionable nor contrary to public policy to enforce provisions of the applicable 1984 and 1985 Massachusetts automobile insurance policies under which the defendant insurance company was subrogated to sums that the plaintiff policyholders might recover from third party nonmotorist tortfeasors due to underinsurance coverage payments that the defendant might make to the plaintiffs under the policies in excess of the $10,000 compulsory underinsurance coverage of G. L. c. 175, § 113L, and the $15,000 mandatorily-offered optional additional underinsurance coverage of G. L. c. 175, § 113C. [84-86]

CIVIL ACTION commenced in the Superior Court Department on October 30, 1987.

The case was heard by *John M. Xifaras*, J., and was reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Paul J. Driscoll* for the plaintiffs.

*Stephen M. A. Woodworth* for the defendant.

LIACOS, C.J. In this case, we answer four reported questions involving underinsured motorist coverage under two separate automobile insurance policies.

The parties have stipulated to the following facts. On May 11, 1985, Gregory A. Santos, II, the four year old son of Gregory A. Santos and Renee Santos, while riding a three wheel "big-wheel" bike, was struck and killed by a 1977 Ford Granada automobile owned and operated by Anna A. Durling. Durling's insurance policy, issued by Fireman's Fund Insurance Company (Fireman's), provided mandatory coverage for bodily injury to others in the amounts of $10,000 per person and $20,000 per accident. The plaintiffs negotiated a settlement with Fireman's, assented to by the

defendant Lumbermens Mutual Casualty Company (Lumbermens), in which the plaintiffs received $20,000. That sum is insufficient to cover the amount of damages sustained by the plaintiffs.

Gregory Santos' 1983 Ford Ranger automobile was covered at the time of the accident by a Massachusetts automobile insurance policy issued by the defendant Lumbermens. The policy, effective October 1, 1984, provided coverage of up to $100,000 per person and up to $300,000 per accident for injury to Gregory Santos or to any member of his household caused by an uninsured or underinsured automobile. Gregory Santos paid an annual premium of $36 for this underinsurance coverage. Renee Santos had a separate insurance policy with Lumbermens at the time of the accident (effective January 1, 1985), covering her 1979 Oldsmobile Cutlass automobile, and also providing uninsured or underinsured coverage of $100,000 maximum per person and $300,000 maximum per accident, for which she paid an annual premium of $40.[2]

Gregory Santos and Renee Santos demanded $300,000 under each insurance policy issued by Lumbermens. After Lumbermens refused to tender the $600,000, the plaintiffs made proper demand for arbitration, asserting claims for the conscious pain and suffering of their son; for consortium-like damages of the next of kin under the wrongful death statute; for punitive damages due to the gross negligence of Anna A. Durling; and for funeral and burial expenses. See G. L. c. 229, § 2 (1988 ed.). After certain coverage issues, which form the basis of this case, arose during the arbitration proceeding, the plaintiffs commenced this action in the Superior Court for Plymouth County under the Declaratory Judgment Act, G. L. c. 231A (1988 ed.). The judge reported this case to the Appeals Court. We granted the parties' joint application for direct appellate review.

---

[2]We shall refer to relevant operative language of each policy in the appropriate sections of this opinion.

The following are the reported questions:

1. Whether and to what extent the $100,000 "per person," $300,000 "per accident," underinsurance coverage provided under the automobile insurance policy issued by Lumbermens to Renee Santos effective January 1, 1985, upon her 1979 Oldsmobile motor vehicle may be "stacked" with or upon the $100,000 "per person," $300,000 "per accident," underinsurance coverage provided under the automobile insurance policy issued by Lumbermens to Gregory A. Santos effective October 1, 1984, upon his 1983 Ford motor vehicle.

2. In an action for wrongful death arising out of a motor vehicle accident commenced by the administrator of the decedent's estate under G. L. c. 229 (1988 ed.), for purposes of determining the amounts of underinsurance coverage available under the applicable standard 1984 and 1985 Massachusetts Automobile Insurance policies (with the mandatory endorsements), when and to what extent is the administrator considered to be a separate "person" in his presentation and prosecution of:

    (a)   the claim of decedent's estate under G. L. c. 229, § 2 (2), for funeral and burial expenses;

    (b)   the claim of decedent's estate under G. L. c. 229, § 2 (3), for punitive damages in such case where a decedent's death was caused by the reckless conduct or gross negligence of the underinsured tortfeasor;

    (c)   the claim of decedent's estate under G. L. c. 229, § 6, for decedent's conscious pain and suffering prior to his death; and

    (d)   the claim of decedent's next of kin under G. L. c. 229, § 2 (1), for consortium-like damages.

3. Whether the underinsurance provisions of the two automobile insurance policies applicable here provide coverage for an award of punitive damages made under G. L. c. 229, § 2 (3), as a result of the recklessness or gross negligence of the underinsured tortfeasor, Anna A. Durling.

4. Whether the defendant Lumbermens is subrogated under the policies to any sums that the plaintiffs may recover from third-party nonmotorist tortfeasors due to underinsurance coverage payments that Lumbermens may make to the plaintiffs under the policies in excess of the $10,000 compulsory underinsurance coverage of G. L. c. 175, § 113L (1988 ed.), and the $15,000 mandatorily-offered optional additional underinsurance coverage of G. L. c. 175, § 113C (1988 ed.).

1. *Stacking.* Lumbermens rightly concedes that the plaintiffs are entitled to "stack"[3] the combined underinsurance coverages per person under each policy at least up to $125,000.[4] Lumbermens contends, however, that the plaintiffs may not stack the $100,000 per person benefits of Gregory Santos' policy with the $100,000 per person benefits of Renee Santos' policy, or Gregory Santos' $300,000 per accident benefits with Renee Santos' $300,000 per accident benefits. We disagree.

Lumbermens argues that the "anti-stacking" exclusion in the policy prohibits the plaintiffs from recovering more than $125,000 per injured person. The exclusion provides: "You may have two or more auto policies with us covering the same claim. In that case, the most we will pay is the highest

---

[3] "Stacking is where a claimant adds all available policies together to create a greater pool in order to satisfy his actual damages." *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 456 n.7 (1985), quoting 12A M.S. Rhodes, Couch's Cyclopedia of Insurance Law § 45:651, at 207 (2d ed. rev. 1981).

[4] The $125,000 figure is reached as follows. At least $100,000 is available under one of the policies. Pursuant to G. L. c. 175, § 113L, as amended by St. 1980, c. 532, § 1, each policy issued in the Commonwealth must provide coverage of at least $10,000 per person per accident. See *Cardin* v. *Royal Ins. Co.*, *supra* at 456; *LeCuyer* v. *Metropolitan Property & Liab. Ins. Co.*, 401 Mass. 709, 711 (1988). And, for each policy, Lumbermens had to provide the $15,000 of optional underinsurance coverage required to be offered by G. L. c. 175, § 113C, as amended by St. 1971, c. 520, § 1. *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259, 264 (1987); *LeCuyer* v. *Metropolitan Property & Liab. Ins. Co.*, *supra* at 711. As a result, at least $100,000 had to be provided under one policy, and at least $25,000 had to be provided under the other policy.

amount payable under the applicable coverage in any one of those policies."[5]

"[W]hen there is no ambiguity, we will construe the words of an insurance policy according to their ordinary meaning." *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453 (1985). The anti-stacking exclusion is unambiguous. In the "Introduction" portion of each policy, the word "you" is defined as follows: "This insurance policy is a legal contract between the policy-owner (you) and the company (we or us)." The "Definitions" portion of each policy provides: "You or Your refers to the person named on the Coverage Selections Page." Each policy contained a name on the coverage selections page, just after the phrase "this policy is issued to." "You," then, refers to the owner of each policy. See *Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 41 & n.2 (1986). The word "have" connotes ownership. *Busteed* v. *Cambridge Savs. Bank*, 306 Mass. 9, 14 (1940). "You may have two or more auto policies with us" thus refers to a situation where one policy owner holds two or more policies with Lumbermens. Such is not the case here.

The policy covering the Ford automobile listed Gregory A. Santos on the Coverage Selections Page, and the policy covering the Oldsmobile automobile listed Renee Santos. Each policy provided $100,000 maximum per person underinsurance coverage, for which each named insured paid a separate premium. Each policy is a separate obligation by Lumbermens to pay up to the stated coverage amounts in the event of an accident to a covered person.[6]

At the time of the accident, G. L. c. 175, § 113L, did not prohibit stacking the underinsurance benefits of two separate

---

[5]Lumbermens does not claim that any other language in the policy prevents the plaintiffs from stacking their liability limits.

[6]It is undisputed that the Santoses' child, Gregory A. Santos, II, was a member of the Santos household and thus covered under the policies and that Anna A. Durling is an "underinsured motorist" under G. L. c. 175, § 113L (2). *Manning* v. *Fireman's Fund Am. Ins. Cos.*, *supra* at 42 n.4.

policies.[7] The coverage at issue here was "purely optional and thus entirely a matter of contract." *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259, 266 (1987). *Woodman* v. *Hartford Accident & Indem. Co.*, 27 Mass. App. Ct. 1120, 1122 (1989). The Santoses each contracted with Lumbermens for $100,000 maximum per person underinsurance coverage, and nothing prohibits them from stacking their benefits under each policy.[8]

2. *"Per person" limitation.* We now consider, under the terms of each policy, when and to what extent the administrator in the wrongful death action may be considered a separate "person" with respect to the various claims in the case.

We first examine the policy of Gregory A. Santos, issued in 1984. We recite the relevant language from the policy: "The most we will pay for injury to any one person as a result of any one accident is [$100,000]. The most we will pay for injuries to two or more people as a result of a single accident is [$300,000]."[9] Lumbermens contends that, in a wrongful death action, there is only one "person" to whom it must pay for injuries — namely, the administrator. We disagree.

Under the wrongful death statute, G. L. c. 229, § 2, a "personal representative" may bring an action "on behalf of the designated categories of beneficiaries." *Gaudette* v. *Webb*, 362 Mass. 60, 71 (1972). General Laws c. 229, § 2, states in pertinent part: "A person who (1) by his negligence

---

[7]General Laws c. 175, § 113L, was amended by St. 1988, c. 273, § 47, to provide that "in no event shall the limit of liability for two or more vehicles or two or more policies be added together, combined, or stacked to determine the limits of insurance coverage available to injured persons." That amendment became effective on January 1, 1989, and is applicable to policies or contracts issued or renewed on or after January 1, 1989. See St. 1988, c. 273, § 77. It does not affect the resolution of this case. See *Lumbermens Mut. Casualty Co.* v. *DeCenzo*, 396 Mass. 692, 694 (1986).

[8]The above stacking analysis equally applies to the "per accident" limitation of each policy.

[9]The policy also provided: "We will pay damages to or for: (1) You, or any household member. . . . (3) Anyone else for damages he or she is entitled to recover because of injury to a person covered under this Part."

causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person . . . shall be liable in damages in the amount of: (1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered, as provided in section one, including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered; (2) the reasonable funeral and burial expenses of the decedent; (3) punitive damages in an amount of not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant."

General Laws c. 229, § 1, referred to in the above quoted sentence, lists the persons entitled to receive damages, if the decedent has no spouse or issue, as the "next of kin."[10] These individuals are thus allowed to pursue, through the administrator, their consortium-like damages. The reasonable burial expenses and any punitive damages are recoverable by the estate regardless of the existence or identities of beneficiaries. *Burt* v. *Meyer*, 400 Mass. 185, 189 (1987). In addition, damages recovered for conscious pain and suffering are considered to be "assets of the estate of the deceased." G. L. c. 229, § 6. *Pobieglo* v. *Monsanto Co.*, 402 Mass. 112, 118 (1988). "Although G. L. c. 229, § 6 . . . permits the joinder of separate counts for death and for conscious suffering in a single action, they are separate causes of action." *Id.*, quoting *Gaudette* v. *Webb, supra* at 62. In this case we conclude that there are three separate injured persons: (1) Gregory A. Santos, who utilizes the administrator as a "conduit" to recover his consortium-like claims, *Gaudette* v. *Webb, supra* at 72; (2) Renee Santos, for her consortium-like claims; (3) the

---

[10]Under the wrongful death statute, Gregory A. Santos and Renee Santos are each considered to be the "next of kin" of Gregory A. Santos, II, for the purposes of determining the consortium-like damages listed in the statute. See *Schultz* v. *Grogean*, 406 Mass. 364, 366 (1990).

estate, for the claims of punitive damages,[11] funeral and burial expenses, and conscious pain and suffering of the deceased.[12] We disagree with Lumbermens' contention that because one administrator brings an action under the wrongful death statute, only one "person" can be considered "injured" under the insurance policy. In *Bilodeau v. Lumbermens Mut. Casualty Co.*, 392 Mass. 537 (1984), we held that a loss of consortium claimant is a separate "injured person" under a policy identical in all relevant respects to that in this case. We do not think that the procedural framework of the wrongful death statute, through which an administrator brings an action on behalf of the next of kin, makes each person who has suffered consortium-like damages any less injured. Cf. *Norman v. Massachusetts Bay Transp. Auth.*, 403 Mass. 303, 308 (1988). To hold otherwise would elevate form over substance, looking less at the question, "who is injured," and more at the question, "who is technically bringing the suit."[13]

We realize that our decision today differs in part from the conclusion reached by the Appeals Court in *Doyon v. Travelers Indemn. Co.*, 22 Mass. App. Ct. 336 (1986).[14] The Appeals Court in that case placed undue stress on the word "amount" in G. L. c. 229, § 2. As *Burt v. Meyer, supra* at 186, 191, shows, the amount recovered in a wrongful death action is not a "single indivisible amount" as the Appeals Court suggested (*Doyon v. Travelers Indem. Co., supra* at

---

[11]But see section three of this opinion, *infra.*

[12]We reject the Santoses' contention that each claim of the estate should be treated as if it were an injury to an additional separate person.

[13]We do not think that *Hallett v. Wrentham*, 398 Mass. 550, 553, 556 (1986), compels a contrary result. In that case, we interpreted the meaning of the "per plaintiff" limitation of the Massachusetts Tort Claims Act, G. L. c. 258, § 2 (1988 ed.). In this case, Gregory and Renee Santos argue that they and the estate each may be considered different persons for the purposes of the "per injured person" limitation in the insurance policy. This is a different question from the statutory meaning of the word "plaintiff" in the Massachusetts Tort Claims Act.

[14]We say "in part" because that case did not involve any claim for conscious pain and suffering. *Id.* at 336.

339), but an amount which is intended to be distributed to the various beneficiaries and the estate. We decline to follow the result or reasoning of *Doyon.*

We turn now to Renee Santos' automobile policy, which contains different operative language pertinent to this question. Her policy, which was effective January 1, 1985, contains a 1985 mandatory endorsement promulgated by the Commissioner of Insurance intended to eliminate the effect of our decision in *Bilodeau* v. *Lumbermens Mut. Casualty Co., supra.* See *Liberty Mut. Ins. Co.* v. *Commissioner of Ins.,* 395 Mass. 765 (1985). In relevant part, Renee Santos' amended policy provided: "The most we will pay for injuries to one or more persons as a result of bodily injury to any one person in any one accident is shown on the Coverage Selections Page as the 'per person' limit. Subject to this limit, the most we will pay for injuries to two or more people as the result of bodily injury to two or more people in any one accident is shown on the Coverages Selections Page as the 'per accident' limit." This language is clear and unambiguous. It explicitly applies the "per person" limitation to injuries to one or more persons, which result from bodily injury to any one person in any one accident. As such, it does not allow for separate "per person" treatment of the consortium-like claims in this case, for they arose as a result of bodily injury to "any one person," in this case, Renee Santos' son. As we stated recently, "[t]he Commissioner effectively changed the *Bilodeau* result by modifying the 'per person' liability language." *Pinheiro* v. *Medical Malpractice Joint Underwriting Ass'n of Mass.,* 406 Mass. 288, 295-296 (1989).

Renee Santos, under her policy, then, is limited to the $100,000 per person maximum recovery with respect to all of the claims arising from the injury to and death of her son.

3. *Punitive damages*. We consider next whether punitive damages[15] are recoverable under the underinsurance provisions of each automobile insurance policy.[16]

We begin our analysis by considering what is required under G. L. c. 175, § 113L, the statute which mandates compulsory uninsured and underinsured coverage. That statute provides, in relevant part: "No policy shall be issued or delivered in the commonwealth with respect to a motor vehicle . . . unless such policy provides coverage *in amounts or limits prescribed for bodily injury or death* for a liability policy under this chapter . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . and hit-

---

[15]The wrongful death act, G. L. c. 229, § 2, provides for the recovery from the tortfeasor of "punitive damages in an amount of not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant."

The Santoses claim that they may recover punitive damages from Lumbermens resulting from the recklessness or gross negligence of the underinsured tortfeasor.

[16]There is no clear trend among the several States which have considered the question whether punitive damages may be recovered under uninsured motorist policies. The courts of eight States have denied coverage. See *State Farm Mut. Auto. Ins. Co.* v. *Wilson*, 162 Ariz. 251 (1989); *California State Auto. Ass'n Inter-Ins. Bureau* v. *Carter*, 164 Cal. App. 3d 257 (1985); *Suarez* v. *Aguiar*, 351 So. 2d 1086 (Fla. Dist. Ct. App. 1977); *State Farm Mut. Auto. Ins. Co.* v. *Mendenhall*, 164 Ill. App. 3d 58 (1987); *Braley* v. *Berkshire Mut. Ins. Co.*, 440 A.2d 359 (Me. 1982); *State Farm Mut. Auto. Ins. Co.* v. *Daughdrill*, 474 So. 2d 1048 (Miss. 1985); *Laird* v. *Nationwide Ins. Co.*, 243 S.C. 388 (1964); *Burns* v. *Milwaukee Mut. Ins. Co.*, 121 Wis. 2d 574 (Wis. Ct. App. 1984). The courts of six States have allowed recovery. See *Sharp* v. *Daigre*, 545 So. 2d 1063 (La. Ct. App. 1989); *Stewart* v. *State Farm Mut. Auto. Ins. Co.*, 104 N.M. 744 (1986); *Hutchinson* v. *J.C. Penney Casualty Ins. Co.*, 17 Ohio St. 3d 195 (1985); *Mullins* v. *Miller*, 683 S.W.2d 669 (Tenn. 1984); *Home Indem. Co.* v. *Tyler*, 522 S.W.2d 594 (Tex. Civ. App. 1975); *Lipscombe* v. *Security Ins. Co. of Hartford*, 213 Va. 81 (1972). See also Comments, Punitive Damages Under Uninsured Motorist Coverage — Oregon's Probable Approach, 24 Willamette L. Rev. 933 (1988); Note, Uninsured Motorist Insurance Now Covers Punitive Award — *Hutchinson* v. *J.C. Penney Casualty Ins. Co.*, 19 Akron L. Rev. 325 (1985); Annotation, Punitive Damages as Within Coverage of Uninsured or Underinsured Motorist Insurance, 54 A.L.R. 4th 1186 (1987 & 1989 Supp.).

and-run motor vehicles *because of bodily injury, sickness or disease, including death resulting therefrom,* and coverage for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles . . . whose policies or bonds are insufficient in limits of liability to satisfy said damages" (emphasis supplied).

The statute does not state explicitly whether punitive damages may be recovered under a compulsory underinsurance policy. We think there is some ambiguity as to whether recovery of punitive damages is encompassed within the phrases "coverage . . . for bodily injury or death" and "legally entitled to recover damages . . . because of bodily injury . . . including death." Compare *Braley* v. *Berkshire Mut. Ins. Co.*, 440 A.2d 359, 361 (Me. 1982) ("for bodily injury" refers to compensatory, not punitive, damages); *Mullins* v. *Miller*, 683 S.W.2d 669, 673 (Tenn. 1984) (Drowota, J., dissenting) ("because of bodily injury" properly describes compensatory, not punitive, damages) with *Stewart* v. *State Farm Mut. Ins. Co.*, 104 N.M. 744, 746 (1986) ("because of bodily injury" includes punitive damages, which are predicated on actual damages).

We may resolve this ambiguity by examining "the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination*, 406 Mass. 515, 524 (1990), quoting *O'Brien* v. *Director of the Div. of Employment Sec.*, 393 Mass. 482, 488 (1984). See *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 454 (1985). We have stated that "the purpose of the uninsured motor vehicle statute [is] to provide the availability of compensation for bodily injury or death caused by a tortfeasor who is uninsured." *Surrey* v. *Lumbermens Mut. Casualty Co.*, 384 Mass. 171, 173 (1981). "[T]he aim of the uninsured motorist statute is to minimize the catastrophic financial loss for victims of automobile accidents caused by the negligence of uninsured tortfeasors." *Id.* at 177. See *Cardin* v. *Royal Ins. Co.*, *supra* at 454. General Laws c. 175,

§ 113L, mandates coverage "for the protection of persons insured," which also suggests a compensatory purpose.

Punitive damages under the wrongful death statute, G. L. c. 229, § 2, serve different purposes. " '[T]he purposes underlying the allowance of punitive damages . . . are punishment of the defendant and deterrence of future wrongdoing.' *Schulhof* v. *Northeast Cellulose, Inc.*, [545 F. Supp. 1200, 1206 (D. Mass. 1982)], quoting *In re Air Crash Disaster near Chicago, Ill., on May 25, 1979*, 644 F.2d 594, 613 (7th Cir.), cert. denied, 454 U.S. 878 (1981). *Valcourt* v. *Hyland*, 503 F. Supp. 630, 639 (D. Mass. 1980). Restatement (Second) of Torts § 908 (1979). 'Such damages are not awarded to compensate the plaintiff.' *Freeman* v. *World Airways, Inc.*, 596 F. Supp. 841, 846 (D. Mass. 1984)." *Burt* v. *Meyer*, 400 Mass. 185, 189 (1987).

We do not think that the Legislature, in devising a statutory scheme by which the victim of an underinsured motorist may be compensated for his or her losses, obligated the insurer to provide coverage for punitive damages. Allowing recovery of punitive damages would not serve the purpose of compensating the injured party. See *State Farm Mut. Auto. Ins. Co.* v. *Wilson*, 162 Ariz. 251 (1989); *Braley* v. *Berkshire Mut. Ins. Co.*, *supra* at 362; *State Farm Mut. Auto. Ins. Co.* v. *Mendenhall*, 164 Ill. App. 3d 58, 62 (1987). The wrongful death statute allows for compensation in a subsection distinct from that providing for punitive damages. See G. L. c. 229, § 2. Nor would allowance of punitive damages under the underinsurance statute further the purposes of punitive damages. Requiring an insurance company to pay punitive damages to the insured would not serve to deter wrongdoing or punish the wrongdoer; rather it would result in payment of punitive damages by a party who was not a wrongdoer. See *California State Auto. Ass'n Inter-Ins. Bureau* v. *Carter*, 164 Cal. App. 3d 257, 261-262 (1985); *State Farm Mut. Auto. Ins. Co.* v. *Daughdrill*, 474 So. 2d 1048, 1052 (Miss. 1985); *Burns* v. *Milwaukee Mut. Ins. Co.*, 121 Wis. 2d 574, 580 (Wis. Ct. App. 1984). In the underinsurance context, where the wrongdoer is not in a contractual relationship with

the insurance company, there is not even the possible deterrent effect of higher premium rates. See *Braley* v. *Berkshire Mut. Ins. Co.*, *supra* at 363. It is not enough to say that the insurance company may sue the tortfeasor to recover the punitive damages. Cf. *Stewart* v. *State Farm Mut. Auto. Ins. Co.*, *supra* at 747. In the case of hit-and-run drivers, there may be no tortfeasor to sue, and the probability of recovering from other underinsured tortfeasors, who often are judgment-proof, is not great. See *State Farm Mut. Auto. Ins. Co.*, v. *Wilson, supra*; *Braley* v. *Berkshire Mut. Ins. Co.*, *supra* at 363; *Burns* v. *Milwaukee Mut. Ins. Co.*, *supra* at 580; *State Farm Mut. Auto. Ins. Co.* v. *Mendenhall, supra* at 62. See also Note, Uninsured Motorist Insurance Now Covers Punitive Award — *Hutchinson* v. *J.C. Penney Casualty Ins. Co.*, 19 Akron L. Rev. 325, 328 n.27 (1985). In sum, neither the purposes of the underinsurance statute nor the wrongful death statute will be served by requiring that punitive damages shall be considered as part of the "damages" allowable under G. L. c. 175, § 113L.

The insurance policies in this case essentially track the language of the statute. They provide: "Sometimes an owner or operator of an auto legally responsible for an accident is uninsured or underinsured. . . . Under this Part, we will pay *damages for bodily injury* to people injured or killed in certain accidents caused by uninsured, underinsured, or hit and run autos. We will pay only if *the injured person is legally entitled to recover* from the owner or operator. . . . We will pay damages to . . . [a]nyone else for *damages he or she is entitled to recover because of injury to a person* covered under this Part" (emphasis supplied). We refrain from construing this language against Lumbermens, considering that the words find their source in the statutory provisions of G. L. c. 175, § 113L. See *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537, 541 (1984). "[T]he fair meaning of the language used, as applied to the subject matter," in light of the above discussion concerning the interpretation of nearly identical statutory language, *id.* quoting *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass.

221, 226 (1971), leads us to conclude that punitive damages are not recoverable under the terms of the policy.[17]

4. *Subrogation rights.* Finally, we consider the question of Lumbermens' subrogation rights under the policies in question. Each policy contained the following exclusion: "Sometimes you or someone else may recover money from the person legally responsible for an accident and *also* receive money from us for the same accident. If so, the amount we paid must be repaid to us to the extent that you or someone else recovers. . . . Whenever we are entitled to repayment from anyone, the amount owed us can be reduced by our proportionate share of the costs of recovery of the money, including reasonable attorneys' fees." (Emphasis in original.)

Both parties agree that this provision applies to money recovered by the insured from *nonmotorist* third-party tortfeasors. The Santoses, however, contend that the subrogation provision contravenes the legislative policy underlying G. L. c. 175, § 113L. They argue that Lumbermens should not be entitled to recover any money the plaintiffs receive from third parties until they have recovered an amount more than their full damages. The Santoses argue that we should reconsider our recent holding in *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366, 372 (1988), which decided this issue against them. We decline to do so.

In *Bertassi*, we held that subrogation provisions identical to those in this case did not conflict with the objectives of the Legislature in mandating underinsurance coverage. We stated that "[a] person in the plaintiff's circumstances is entitled to be compensated to the extent of the applicable automobile liability insurance, plus, as a minimum, an amount equal to the limit of his underinsurance coverage." Under the subrogation provisions, "when the plaintiff recovered an additional $20,000 from other alleged [nonmotorist] tortfeasors, that $20,000 was recovered for [the insurer's] bene-

---

[17]We note that we do not deal here with the issue whether a tortfeasor's insurer may be obliged to pay for punitive damages.

fit," even though the plaintiff had not been compensated to the full extent of his loss. *Id.* at 372.

That decision is consistent with the framework of G. L. c. 175, § 113L. That statute was enacted to provide protection against uninsured and underinsured *motorists*. The statute does not, and was not intended to, provide protection against uninsured or underinsured *nonmotorist* tortfeasors. Indeed, subsection four of G. L. c. 175, § 113L, itself provides the insurer with subrogation rights with respect to coverage required under the statute.

The Santoses, perhaps anticipating that we would not overrule *Bertassi*, argue that Lumbermens should not be entitled to exercise its subrogation rights with respect to the *optional* underinsurance provisions of the two policies. "We must construe the words of the policy according to 'the fair meaning of the language used, as applied to the subject matter,' . . . as long as the statutory language or legislative policy of G. L. c. 175, § 113L, is not contravened." *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259, 266 (1987), quoting *Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 40 (1986). The subrogation provision's terms, with respect to damages exceeding the mandatory limits, was optional and "entirely a matter of contract." *Johnson* v. *Hanover Ins. Co.*, *supra* at 266. The subrogation provision's terms are unambiguous.

The Santoses argue that because the insurance policy was a "contract of adhesion," the subrogation provision should be declared null and void. It is true that in a situation of this type, where an individual consumer enters into a standardized contract with an insurance company, there is most often an inequality of bargaining power. See *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453 (1985). See also *Steven* v. *Fidelity & Casualty Co. of N.Y.*, 58 Cal. 2d 862, 879 (1962); *C & J Fertilizer, Inc.* v. *Allied Mut. Ins. Co.*, 227 N.W.2d 169, 173-177 (Iowa 1975); Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv. L. Rev. 961, 966-967 (1970). It is this concern, in part, which animates our rule that ambiguous insurance policy provisions are to be strictly

construed against the insurer. Cf. *Koshland* v. *Columbia Ins. Co.*, 237 Mass. 467, 472 (1921). However, the fact that an insurance policy may be considered a "contract of adhesion" does not lead to the invalidation of all its exclusions. See *Lechmere Tire & Sales Co.* v. *Burwick*, 360 Mass. 718, 720-721 (1972). Where an insurance policy provision leads to an unconscionable result, or violates public policy, it may be held invalid even if, upon a close reading, the terms are clear. See *Liberty Mut. Co.* v. *Tabor*, 407 Mass. 354, 358 (1990); *Lechmere Tire & Sales Co.* v. *Burwick, supra.* Cf. *Minassian* v. *Ogden Suffolk Downs, Inc.*, 400 Mass. 490, 492 (1987).

In this case, we do not think that enforcement of the subrogation provision leads to an unconscionable result or violates public policy. The policy did not purport to provide coverage for damages caused by nonmotorist uninsured or underinsured tortfeasors. It stated: "We will pay only if the injured person is legally entitled to recover from the *owner or operator of the uninsured, underinsured or hit and run auto*" (emphasis supplied). We would be hard-pressed to declare as violative of public policy a provision which, at least with respect to mandatory underinsurance, has been explicitly sanctioned by the Legislature. See G. L. c. 175, § 113L (4). We do not think the result is so unconscionable as to require invalidation of the provision. See *Lechmere Tire & Sales Co.* v. *Burwick, supra* at 721.

5. *Summary.* We summarize our answers to the reported questions.

1. The $100,000 "per person," $300,000 "per accident," limitation in Gregory A. Santos' policy may be "stacked" with the $100,000 "per person" limitations of Renee Santos' policy.

2. Under Gregory Santos' policy, there are three separate injured "persons": (1) the estate, for funeral and burial expenses and conscious pain and suffering of the deceased; (2) Gregory A. Santos, for his "consortium-like" claims; and (3) Renee Santos for her "consortium-like" claims. Under Renee Santos' policy, there is one injured "person."

3. Punitive damages may not be recovered under the underinsurance provisions of either policy.

4. Lumbermens, with respect to any sums which the Santoses may recover from nonmotorist tortfeasors, has subrogation rights regarding payments which Lumbermens may make to the Santoses under the mandatory or optional underinsurance provisions of the policies.

The case is remanded to the Superior Court for the entry of a declaration of rights of the parties consistent with this opinion.