# United States Court of Appeals

## For the First Circuit

No. 10-2031

JASON J. ROBIDOUX,

Plaintiff, Appellant,

v.

MICHAEL MUHOLLAND;
JAMES CORPORATION D/B/A JAMES CONSTRUCTION,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro,  U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,* Associate Justice,
and Stahl, Circuit Judge.

Daniel S. Hendrie for appellant.
John F. Kelleher with whom Kelly A. Kincaid was on brief for appellees.

April 8, 2011

---

*Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**STAHL**, **Circuit Judge**.  Jason J. Robidoux sued James Corporation d/b/a James Construction ("James Construction") and Michael A. Muholland, Jr. (collectively "defendants") for personal injuries Robidoux suffered while working at a construction site. The district court allowed the defendants' motion for summary judgment, finding that the Rhode Island Workers' Compensation Act ("Rhode Island Act") applied to the action and barred the claims. Because we conclude that the Massachusetts Workers' Compensation Act ("Massachusetts Act") applies to this suit and does not bar Robidoux's claims, we reverse and remand.

## I.  Facts & Background

Most of the facts relevant to this appeal are undisputed. In May 2006, James Construction, a general contractor incorporated and based in Pennsylvania, was working on a project at the Newport Naval Station in Rhode Island.  In search of temporary laborers, James Construction contacted a temporary employment agency, Northeast Temps, Inc. d/b/a Labor Systems ("Labor Systems"), which is a Massachusetts corporation with its principal place of business in Massachusetts.  It does also maintain an office in Rhode Island. In response to James Construction's request, Labor Systems dispatched Robidoux, a Massachusetts resident and newly-minted Labor Systems employee, from its Fall River, Massachusetts office to the Rhode Island job site.  While working at the Newport Naval Station, Robidoux was supervised by Muholland, a James Construction

-2-

employee who was neither a Massachusetts resident nor a Rhode Island resident. During Robidoux's work on the project, he discussed his Massachusetts residency with Muholland. At the conclusion of Robidoux's assignment, Muholland signed a work order that displayed Labor Systems' two Massachusetts locations and their corresponding 508 area code telephone numbers.

Almost six months later, on November 15, 2006, James Construction again contacted Labor Systems, at one of the 508 area code telephone numbers, to specifically request Robidoux's services for a different project at the Newport Naval Station. The next day, Robidoux picked up a work order and his personal protective equipment at Labor Systems' Fall River office before traveling on to Rhode Island.

Robidoux's second stint working at the Newport Naval Station lasted approximately six weeks. During the course of this work, Robidoux received his paychecks, with Rhode Island tax withholdings, from Labor Systems. For Robidoux's services, James Construction remitted payments to an Ohio address provided by Labor Systems. Pursuant to a contract between James Construction and Labor Systems, James Construction assumed responsibility for supervising Robidoux while he was at the construction site. Muholland, who was serving as the project's superintendent, provided this supervision. Additionally, the contract required Labor Systems to provide workers' compensation insurance for the

employees it provided to James Construction. At the time Labor Systems and James Construction agreed to the contract, Labor System already had workers' compensation insurance policies from Liberty Mutual Insurance Company ("Liberty Mutual") for Massachusetts and from Beacon Mutual Insurance Company ("Beacon Mutual") for Rhode Island. James Construction also required Labor Systems to provide a certificate of its Rhode Island workers' compensation insurance.[1]

On January 4, 2007, while working with Muholland at the Newport Naval Station site, Robidoux was seriously injured when a 648 pound compactor fell on him. That same day, without Robidoux's knowledge, Labor Systems filed a report of injury so that Robidoux could collect Rhode Island workers' compensation benefits. Consequently, Robidoux began receiving $629.27 a week from Beacon Mutual. These payments lasted for almost seventeen weeks and totaled $10,248.15.

On February 20, 2007, Robidoux filed a claim for Massachusetts workers' compensation benefits with Liberty Mutual. An administrative judge in the Massachusetts Department of Industrial Accidents concluded that Robidoux was entitled to these benefits, and ordered Liberty Mutual to take credit for the monies

---

[1]Robidoux, noting that this certificate was not received until the day he was injured, asserts that James Construction did not actually require Labor Systems to provide this proof of insurance prior to his injury. Moreover, Robidoux suggests that James Construction only required Labor Systems to provide this certificate because, in addition to Robidoux, Labor Systems also dispatched a Rhode Island resident to work for James Construction.

paid by Beacon Mutual and assume responsibility for future benefits.

On January 9, 2009, Robidoux filed a diversity action in the District of Massachusetts alleging that the injuries he suffered at the construction site were caused by the defendants' negligence. On July 29, 2010, the district court allowed the defendants' motion for summary judgment. Robidoux v. Muholland, 733 F. Supp. 2d 198 (D. Mass. 2010). Employing Massachusetts choice of law principles, the district court determined that "Rhode Island [as opposed to Massachusetts] has a substantially more significant relationship to this litigation and, therefore, this court must apply Rhode Island law." Id. at 203. The court went on to conclude that, except in circumstances not present in the case at hand, the Rhode Island Act grants "special employers," such as James Construction, "immunity from private action by injured employees." Id. Similarly, the court concluded that the Rhode Island Act prohibits a plaintiff from suing co-employees such as Muholland. Id. at 204. Robidoux subsequently appealed.

## II. Discussion

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Cortés-Rivera v. Dep't of Corr. and Rehab. of the Commonwealth of P.R., 626 F.3d 21, 26 (1st Cir. 2010). This court reviews a grant of summary judgment de novo. Id. Choice of

-5-

law determinations are questions of law, which we also review de novo.  See Crellin Tech., Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994).  Both parties agree that Massachusetts choice of law principles govern this case.

**A.  A Conflict Exists Between the Relevant Massachusetts and Rhode Island Law**

"[T]he usual first step in applying conflict of law principles is to ascertain whether there is a conflict among the laws of the various States involved."  Cohen v. McDonnell Douglas Corp., 450 N.E.2d 581, 584 n.7 (Mass. 1983).

The Rhode Island Act provides that, except in circumstances not alleged in this appeal, "[t]he right to compensation . . . and the remedy for an injury granted by [the Rhode Island Act], shall be in lieu of all rights and remedies as to that injury now existing . . . against an employer, or its . . . employees."  R.I. Gen. Laws § 28-29-20.  The defendants assert, as the district court concluded, that this "employer" immunity extends to "special employers" — that is, "person[s] who contract[] for services with a general employer for the use of an employee," id. § 28-29-2(6)(ii) — and their employees.  See Sorenson v. Colibri Corp., 650 A.2d 125 (R.I. 1994).  Accordingly, the defendants contend, the Rhode Island Act bars Robidoux's claims against James Construction, the special employer, and its employee, Muholland.  On appeal, Robidoux does not dispute this interpretation of Rhode Island law, and we

therefore assume that the Rhode Island Act, if applicable, would bar this action.

The question therefore becomes whether the Massachusetts Act would similarly bar Robidoux's claims against the defendants.[2] We conclude that it would not.

Generally, "the [Massachusetts Act] bars employees from recovering against their employers for injuries received on the job." Barrett v. Rodgers, 562 N.E.2d 480, 482 (Mass. 1990) (citing Mass. Gen. Laws ch. 152, §§ 23, 24).[3] An injured employee retains

---

[2]Although the district court did not address this issue, we are free to resolve questions of law in the first instance. See Gately v. Massachusetts, 2 F.3d 1221, 1228 n.4 (1st Cir. 1993).

[3]Section 24 provides in part: "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer . . . written notice that he claimed such right . . . ." Mass. Gen. Laws ch. 152, § 24.

Section 23 reads:

> If an employee files any claim or accepts payment of compensation on account of personal injury under this chapter, or submits to a proceeding before the department under sections ten to twelve, inclusive, such action shall constitute a release to the insurer of all claims or demands at common law, if any, arising from the injury. If an employee accepts payment of compensation under this chapter on account of personal injury or makes an agreement under section forty-eight, such action shall constitute a release to the insured of all claims or demands at common law, if any, arising from the injury.

Id. § 23.

the right, however, "to bring suit against third parties who may be liable for injuries compensable under the [Massachusetts] Act." Id. (citing Mass. Gen. Laws ch. 152, § 15). More specifically, "nothing in [section fifteen], or in section eighteen or twenty-four shall be construed to bar an action at law . . . against any person other than the insured person employing such employee and liable for payment of the compensation provided by this chapter . . . and said insured person's employees." Mass. Gen. Laws ch. 152, § 15 (emphasis added); cf. Searcy v. Paul, 478 N.E.2d 1275, 1278 (Mass. App. Ct. 1985) ("[T]he [above-quoted statutory language] was taken by text and periodical writers as broadly abolishing the so-called 'common employment' doctrine and permitting third party actions by . . . an injured employee against all but his immediate insured employer.").

In short, for an employer to be immunized pursuant to the Massachusetts Act "(1) a 'direct employment relationship must exist' between the injured party and the person claiming immunity, and (2) 'the employer must be an insured person liable for the payment of compensation.'" Roberts v. Delta Air Lines, Inc., 599 F.3d 73, 77 (1st Cir. 2010) (quoting Fleming v. Shaheen Bros., Inc., 881 N.E.2d 1143, 1146 (Mass. App. Ct. 2008)).

Turning to the second prong of this test, an "insured person" is "an employer who has provided by insurance for the payment to his employees by an insurer of the compensation provided

for by this chapter, or is a self-insurer . . . or is a member of workers' compensation self-insurance group." Mass. Gen. Laws ch. 152, § 1(6). Further, Massachusetts law requires that, absent an agreement to the contrary, in circumstances involving a special employer and a general employer, "the liability for the payment of compensation for the injury shall be borne by the general employer or its insurer." Id. § 18 (emphasis added).

James Construction is not an "insured person liable for the payment of [workers'] compensation." To the contrary, pursuant to the express terms of their agreement, Labor Systems assumed responsibility for providing Robidoux's workers' compensation insurance. Although James Construction may have paid a rate that effectively reimbursed Labor Systems for that insurance, James Construction does not point to any authority suggesting that such an arrangement equates to "provid[ing]" workers' compensation insurance and being "liable for payment of workers' compensation." Cf. Numberg v. GTE Transp., Inc., 607 N.E.2d 1, 2 (Mass. App. Ct. 1993) (finding that special employer was not an insured person liable for payment of workers' compensation, even though it reimbursed general employer for the cost of workers' compensation benefits, because there was no agreement that special employer would provide those benefits). Consequently, Robidoux's claims

against James Construction are not barred by the Massachusetts Act.[4]

Nor would the Massachusetts Act immunize Muholland, as a "co-employee," from this action. The defendants do not point to any case law suggesting that co-employee immunity exists beyond that which is derived from an employer's immunity. See Mass. Gen. Laws ch. 152, § 15 ("Nothing in this section, or in section eighteen or twenty-four shall be construed to bar an action . . . against any person other than the insured person employing such employee and liable for payment of the compensation provided by this chapter . . . and said insured person's employees." (emphasis added)); Fredette v. Simpson, 797 N.E.2d 899, 901-02 (Mass. 2003) (citing section 15 as creating the Massachusetts Act's co-employee immunity). Because James Construction does not meet the

---

[4]We are unpersuaded by the defendants' argument that James Construction is protected from this action because it satisfies the Massachusetts Act's definition of "employer" and Robidoux was a "loaned servant" to James Construction. First, just because the Massachusetts Act's definition of "employer" may include a special employer like James Construction, see Mass. Gen. Laws ch. 152, § 1(5), it does not follow that its other requirements for immunity — outlined in sections 15, 23, and 24 — are meaningless. Nor are we moved by the defendants' reliance on Roberts v. Delta Air Lines, Inc., No. 07-cv-12154, 2008 WL 5156654 (D. Mass. Dec. 4, 2008), aff'd, 599 F.3d 73. In that case, the plaintiff did not question whether the defendant was an "insured person," and the district court did not address this prerequisite for immunity. See id.; see also Roberts, 599 F.3d at 78 n.5 ("[Plaintiff] asserts . . . that there is a dispute of fact as to whether Delta was an 'insured person liable for payment of compensation' to Roberts such that it was entitled to immunity. Because Roberts did not raise this argument before the district court, it is waived." (internal citations omitted)).

-10-

Massachusetts Act's prerequisites for immunity, neither does Muholland.

**B.**     **Under Massachusetts Choice of Law Principles, the Massachusetts Act Governs the Defendants' Immunity**

Historically, in tort cases, Massachusetts applied the substantive law of the state where the alleged wrong occurred. Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d 832, 834 (Mass. 1994). In the last few decades, however, Massachusetts has moved to a "functional" approach for addressing choice of law issues. Joseph W. Glannon & Gabriel Teninbaum, Conflict of Laws in Massachusetts Part I: Current Choice-of-Law Theory, 92 Mass. L. Rev. 12, 14-15 (2009); see, e.g., New England Tel. & Tel. Co. v. Gourdeau Constr. Co., Inc., 647 N.E.2d 42, 43-44 (Mass. 1995); Cosme, 632 N.E.2d at 834.

This functional approach "responds to the interests of the parties, the States involved, and the interstate system as a whole." Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985). In employing this approach, the Massachusetts Supreme Judicial Court ("SJC") "ha[s] not elected by name any particular choice-of-law doctrine. Rather, [it] consider[s] choice-of-law issues by assessing various choice-influencing considerations, including those provided in the Restatement (Second) of Conflict of Laws (1971), and those suggested by various

commentators."[5]  Cosme, 632 N.E.2d at 834 (quotation marks and other internal citation omitted); see also Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 40 (1st Cir. 2008).

The Second Restatement provides that, in personal injury cases, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties." Restatement (Second) Conflict of Laws § 146 (1971) (hereinafter "Restatement").  Section 6 of the Restatement cites the following factors as relevant to choice of law decisions:

> (a) the needs of the interstate and
>      international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested
>      states and the relative interests of
>      those states in the determination of the
>      particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the
>      particular field of law,
> (f) certainty, predictability and uniformity
>      of result, and

---

[5]The SJC has cited one particular commentator, R.A. Leflar, on multiple occasions.  See, e.g., Bushkin Assocs., 473 N.E.2d at 670 & n.7 (quoting R.A. Leflar, American Conflicts Law § 99, at 198 (3d ed. 1977)).  The SJC has also observed that the factors Leflar urged courts to consider "generally parallel the considerations contained in longer lists, including § 6(2) of the Second Restatement." Id.  In this case, we find that Leflar's factors are either inapplicable or overlap with the section 6 factors, and we therefore do not discuss them.

-12-

                    (g) ease in the determination and application
                        of the law to be applied.

Id. § 6.   The Second Restatement further explains that, in
balancing the section 6 factors, courts should consider various
"contacts," including: "(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred, (c)
the domicil, residence, nationality, place of incorporation and
place of business of the parties, and (d) the place where the
relationship, if any, between the parties is centered."  Id. §
145(2).[6]

        We also note that "the law of a single jurisdiction is
not necessarily to be applied to all issues in a particular case";
rather, we should weigh the relevant considerations "according to
their relative importance to the particular issue involved."  Lou
v. Otis Elevator Co., 933 N.E.2d 140, 151 & n.27 (Mass. App. Ct.)
(citing Choate, Hall & Stewart v. SCA Servs., Inc., 392 N.E.2d 1045
(Mass. 1979); Restatement § 145, cmt. d), review denied, 936 N.E.2d
435 (Mass. 2010).

        Turning to the case at hand, we conclude that the
Massachusetts Act's immunity provisions apply to Robidoux's claims
because Massachusetts, as compared to Rhode Island, "has a 'more

---

        [6]The Restatement also includes five sections specifically
addressing workers' compensation issues.  See Restatement §§ 181-
85.  With the exception of the defendants quoting section 184 in a
footnote, neither party advances any argument based on these
sections.

-13-

significant relationship' to the parties and the occurrence under the considerations provided in § 6."[7]  Cosme, 632 N.E.2d at 835.

First and most importantly, Massachusetts' interests in this case substantially exceed those of Rhode Island.  Robidoux is a Massachusetts resident who, after obtaining the approval of a Massachusetts administrative judge, received benefits from a Massachusetts workers' compensation policy for an injury he suffered while employed by a Massachusetts company.  Even where the injury occurs out of state, Massachusetts retains a significant interest in the extent to which a resident is compensated for a workplace injury.  See, e.g., id. at 836; see also Mass. Gen. Laws ch. 152, § 26 (expressly authorizing paying benefits for injuries sustained outside the state); cf. Pevoski v. Pevoski, 358 N.E.2d 416 (Mass. 1976) (holding, in a wife's suit against her husband stemming from a New York car accident, that Massachusetts law governed spousal immunity issue in part because "the economic and social impact of this litigation will fall on Massachusetts domiciliaries and a Massachusetts insurer").

In addition to its interest in the amount of Robidoux's compensation, Massachusetts also has a stake in who pays that compensation.  Specifically, the Massachusetts Act limits immunity

---

[7]"Because some of [the relevant] factors are either redundant or not determinative, we focus on considerations particularly relevant to the case."  Jasty, 528 F.3d at 40 (internal quotation marks omitted).

-14-

to "insured person[s] employing such employee and liable for payment of [workers'] compensation" in part because permitting recovery from other parties may decrease the cost of workers' compensation insurance by allowing insurers to recoup benefits in some cases.[8] Accordingly, Massachusetts has an interest in injured employees or insurers being able to recover from parties like James Construction and Muholland whenever a Massachusetts' workers' compensation policy assumes responsibility for the payment of benefits.

In contrast, Rhode Island has little interest in how Robidoux is compensated or whether these non-Rhode Island defendants are protected by immunity. Cf. Dasha v. Adelman, 699 N.E.2d 20, 26 (Mass. App. Ct. 1998) (noting that, although plaintiff was injured in Maine, "Maine's interest is significantly diminished" because the Maine defendants were no longer parties to the case). The defendants argue that the Rhode Island Act's immunity provision is in part intended to decrease the cost of doing business in Rhode Island, and therefore Rhode Island has an interest in immunizing contractors for any injury that occurs in

---

[8]See Brown v. Leighton, 434 N.E.2d 176, 178 (Mass. 1982) ("As stated in Furlong v. Cronan, 26 N.E.2d 382 (Mass. 1940), one of the purposes of § 15 is, 'to preserve the cause of action (against the third party) for the benefit of the insurer.'"); see also Mass. Gen. Laws. ch. 152, § 15 ("Either the employee or insurer may proceed to enforce the liability of [persons other than the insured] . . . . The sum recovered shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee . . . .").

the state.  See also Restatement § 184, cmt. b ("[T]o deny . . . immunity . . . would frustrate the efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what these costs will be.").  As defense counsel conceded at oral argument, however, there is nothing in the record establishing that interstate contractors, like James Construction, see a decrease in liability insurance premiums when they take on projects in Rhode Island as opposed to some other state with less generous immunity rules.

To be sure, Rhode Island has an interest in regulating conduct within its borders, and it therefore has an interest in applying its own conduct-regulating rules to events that occur in Rhode Island.  See Lou, 933 N.E.2d at 151 n.27; Restatement § 145, cmt. d.  The specific question in this case, however, is not whether Massachusetts or Rhode Island standards of negligence apply.  Rather, the issue here pertains to the application of workers' compensation immunity rules. Consequently, Rhode Island's conduct-regulating interests are diminished, and our choice of law analysis therefore "place[s] a greater emphasis on the State in which the parties are domiciled." See Lou, 933 N.E.2d at 151 n.27; see also Restatement § 145, cmt. d ("[S]ubject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest

-16-

affected by the actor's conduct was entitled to legal protection . . . . On the other hand, the local law of the state where the parties are domiciled . . . may be applied to determine whether one party is immune from tort liability . . . .").

We recognize that "[a]n important objective of the [Rhode Island Act] was to curtail litigation by injured employees who elected to take advantage of its expedited procedure for obtaining compensation . . . ." See Sorenson, 650 A.2d at 129. Because Robidoux ended up receiving compensation from a Massachusetts policy, however, honoring the purposes underlying workers' compensation has become primarily an issue of Massachusetts concern. As discussed above, Massachusetts prefers to retain third party liability, and the costs associated with it, in order to allow insurers and injured employees to pursue recovery from responsible third parties, which presumably Massachusetts hopes will decrease workers' compensation premiums and attendant welfare costs. Conversely, Rhode Island has traded the benefits of allowing recovery from special employers in exchange for insulating those special employers from the risks of litigation, presumably in an effort decrease the cost of doing business in the state. Here, applying the Rhode Island Act to an out-of-state resident receiving out-of-state workers' compensation benefits would allow Rhode Island to reap the benefits of this trade-off in a situation where the state would not similarly bear any of the burdens.

The parties devote considerable space in their briefs to discussing another section 6 factor: their own and each others' expectations about which state's law would govern this type of action. As for Robidoux's expectations, this consideration cuts both ways. On the one hand, Robidoux was a Massachusetts resident, covered by Massachusetts workers' compensation insurance, employed by a Massachusetts company. On the other hand, the entirety of his work for James Construction occurred in Rhode Island.

Turning to the defendants' reasonable expectations, we first note the parties' disagreement about whether the defendants knew that 508 was a Massachusetts area code, knew that Labor Systems was a Massachusetts company, and/or expected Rhode Island law to apply. We need not, however, wade into these factual disputes. Suffice it to say that when James Construction secured the services of a temporary worker by calling a Massachusetts-based company at a phone number with a Massachusetts area code, it lost any justification for expecting that an accident involving that temporary worker would only implicate Rhode Island law. Similarly, Muholland lacked a reasonable expectation that he would only be subject to Rhode Island law by supervising a temporary worker who had told him he was a Massachusetts resident and by signing a work order that suggested that Robidoux was based out of a state other than Rhode Island. Even if we accept that James Construction's demand for a Rhode Island workers' compensation certificate

-18-

reflected its subjective belief that Rhode Island law would govern any workplace incident, that fact would not alter our conclusion about what expectations were reasonable and justified under the circumstances.

We acknowledge that this action involves substantial contacts with Rhode Island. The injury and injury-causing conduct occurred in Rhode Island, and the parties' relationship was centered in Rhode Island. See Restatement § 145(2). These Rhode Island contacts, however, are simply insufficient to outweigh Massachusetts' superior interests in this case. Moreover, the contacts with Massachusetts are not insubstantial. Of the two states, only Massachusetts can claim a party as a resident or local company, and the Robidoux-James Construction relationship was formed in part by communication — both between James Construction and Labor Systems, and between Labor Systems and Robidoux — to and within Massachusetts.

## III. Conclusion

We conclude that Massachusetts law governs the immunity issue in this case and does not bar Robidoux's claims against the defendants. We therefore reverse the grant of summary judgment and remand for proceedings consistent with this opinion.