II. Choice of Massachusetts or Maine Law (Wrongful Death Claim)
Where, as here, jurisdiction is based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1) (" section 1442(a)"),[12] a federal court adheres to the forum state's choice of law rules to determine the applicable substantive law. See Baird v. Fed. Home Loan Mortg. Corp., Civil Action No. 3:15CV00041, 2016 WL 6583732, at *2 (W.D. Va. Nov. 4, 2016) (" 'federal court's role under § 1442 is similar to that of a federal court sitting in diversity' " with court applying "choice of law rule of the forum state") (citations omitted), aff'd, 706 Fed. Appx. 123 (4th Cir. 2017) (unpublished); Baldonado v. Avrinmeritor, Inc., Civil Action No. 13-833-SLR-CJB, 2014 WL 2116112, at *3 (D. Del. May 20, 2014) (applying "choice of law rule of the forum state" in action removed under section 1442(a) ). In multidistrict litigation, the choice of law rules of the transferor court, i.e., Massachusetts, likewise apply where, as here, the transferor court is the location of the original suit and also the forum state. See In re Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation, 76 F.Supp.3d 294, 300-301 305 (D. Mass. 2015).
"In Massachusetts, courts resolve choice-of-law questions " 'by assessing various choice-influencing considerations," including those provided in the Restatement (Second) of Conflict of Laws (1971).' " McKee v. Cosby, 874 F.3d 54, 59-60 (1st Cir. 2017) (quoting Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 632 N.E.2d 832, 834 (1994) (quoting *352 Bushkin Assocs. v. Raytheon Co., 393 Mass. 622, 473 N.E.2d 662, 668 (1985) ). With respect to torts and personal injuries in particular, the Massachusetts Supreme Judicial Court in Cosme identifies the following, applicable sections in the Restatement (Second) of Conflict of Laws (1971) ("the Restatement"):
Section 145 of the Restatement provides the general principle "applicable to all torts and to all issues in tort," id. at § 145 comment a, and § 146 of the Restatement provides a principle applicable in issues concerning causes of action involving personal injury. Both sections require an examination of the relevant issue in accordance with the principles provided in § 6 of the Restatement.
Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d at 834-35 (footnotes omitted).
Section 146 specifically "applies to personal injuries that are caused either intentionally or negligently and to injuries for which the actor is responsible on the basis of strict liability." Restatement (Second) of Conflict of Laws § 146 cmt. a (1971). It therefore applies to this personal injury negligence and product liability action. Section 146 instructs that the "law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties ...."[13] Restatement (Second) of Conflict of Laws § 146 cmt. a (1971).
The principles or "factors" in section six are:
(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflict of Laws § 6 (1971). In balancing the section six factors, section 145(2) of the Restatement also comes into play in a personal injury action. See Robidoux v. Muholland, 642 F.3d 20, 25-26 (1st Cir. 2011) (quoting and applying section 145(2) in personal injury case). As stated by the First Circuit in Robidoux, in balancing the section six factors:
courts should consider various "contacts," including: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."
Id. (emphasis added) (quoting section 145(2) ); see also Geshke v. Crocs, Inc., 889 F.Supp.2d 253, 260 (D. Mass. 2012) (product liability action applying section 145). Moreover, the comments to section 146 repeatedly cross-reference the comments *353 to section 145. See Restatement (Second) of Conflict of Laws § 146 cmt. c-h (1971).
Both plaintiff and GE devote a substantial portion of their briefs addressing the various contacts in section 145(2). Adhering to their framework and thereafter considering the relevant contacts in determining, with respect to the particular issues GE identifies vis-à-vis the wrongful death claim, whether Massachusetts has a more significant relationship to the occurrence and the parties than Maine under the principles in section six pursuant to section 146, this court turns to the analysis.
First and foremost, Maine is the place of injury because it is the location of Burleigh's exposure to asbestos. It is also the place where he received the diagnosis. See New v. Borg-Warner Corp., 13-00675-CV-W-DGK, 2015 WL 5167643, at *3 (W.D. Mo. Sept. 3, 2015) (noting that "[s]ome courts have held that the injury occurs where the diagnosis is made, not where the plaintiff is exposed to asbestos" but deeming it unnecessary to decide which controls because "place of exposure and diagnosis are the same"). Indeed, plaintiff acknowledges that, "Maine is where Mr. Burleigh resided, and was injured and treated." (Docket Entry # 170, p. 7). In cases involving personal injuries, "the place where the injury occurred is a contact that, as to most issues, plays an important role." Restatement (Second) of Conflict of Laws § 145 cmt. e (1971). This case is no exception.
Turning to the second section 145(2) contact, GE maintains that the conduct causing the injury was Burleigh's exposure to asbestos in the vicinity of GE products and turbines in Maine. (Docket Entry # 162, p. 8). To the contrary, the second contact addresses the conduct of the defendant, i.e., GE. See Restatement (Second) of Conflict of Laws § 145 cmt. e (1971) (referring to "the defendant's conduct" in discussing "[t]he place where conduct occurred"); see also In re Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation, 76 F.Supp.3d at 307 ("Massachusetts courts have 'considered the location of events that constitute the alleged wrongdoing as essential for the substantial interest analysis"). The wrongful conduct of GE occurred primarily in Massachusetts where GE designed, manufactured, and then shipped the turbines to the shipyard in Maine or a Navy storage facility. GE also applied the asbestos-containing gaskets to turbines in Massachusetts and then shipped the gaskets and the turbines to the shipyard in Maine or a Navy storage facility. It additionally shipped asbestos-containing packing and asbestos-containing gaskets as loose parts from Massachusetts to the shipyard or a Navy storage facility.
Notably, whereas the "[c]hoice of the applicable law becomes more difficult in situations where," as here, "the defendant's conduct and the resulting injury occurred in different states," Restatement (Second) of Conflict of Laws § 145 cmt. e (1971), comment e to section 146 explains that the law of the state where the injury occurred "usually" applies in such circumstances. Restatement (Second) of Conflict of Laws § 146 cmt. e (1971) (when conduct and personal injury "occur in different states, ... the local law of the state of injury will usually be applied") (citing to section 145 ). Furthermore, the law where the injury occurred carries even greater weight "when the injured person has a settled relationship to that state, either because he is domiciled or resides there or because he does business there." Id. Conversely, the law of the place of injury might not play an important role "when the place of injury" is "fortuitous," Restatement (Second) of Conflict of Laws § 145 cmt. e (1971), such as in a car accident *354 when the non-resident plaintiffs are "merely passing through" the state where the accident occurred. Kramer v. Acton Toyota, Inc., No. 993733, 2004 WL 2697284, at *3 (Mass. Super. Ct. Nov. 2, 2004). Here, the former principle applies. With the exception of four years in North Carolina and a short time working at a job in New Hampshire, Burleigh resided, lived, and worked in Maine. His settled relationship to Maine renders it all the more likely that Maine law applies. See Restatement (Second) of Conflict of Laws § 146 cmt. e (1971).
As indicted above, the third contact weighs in favor of applying Maine law because Maine was Burleigh's domicile, residence, and place of business throughout the relevant time period and up until his death. GE's recent change of its primary place of business to Massachusetts (Docket Entry # 22, ¶ 2K) (Docket Entry # 162, p. 8) (Docket Entry # 170, p. 3) does not override Burleigh's consistent and enduring presence and connection to Maine. See In re Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation, 76 F.Supp.3d at 307 ("mere fact that a ... defendant is a resident of Massachusetts does not create a substantial interest"). It is true that GE's purportedly wrongful conduct in Massachusetts lends additional weight to GE's place of business contact in Massachusetts. See Restatement (Second) of Conflict of Laws § 145 cmt. e (1971) (importance of domicile, residence, and place of business "depends largely upon the extent to which they are grouped with other contacts" and "state where these contacts are grouped is particularly likely to be the state of the applicable law if either the defendant's conduct or the plaintiff's injury occurred there"). Burleigh's workplace at the shipyard for more than two decades and his lifelong domicile and residence in Maine, however, carry greater weight when grouped with the place of injury in Maine than GE's wrongful conduct in Massachusetts when grouped with its principal place of business in that state. See id.
It is also true that Massachusetts has an interest in holding its resident defendant accountable for its conduct that took place in Massachusetts and caused an injury to a Massachusetts resident. See Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d at 836 ; Restatement (Second) of Conflict of Laws § 145 cmt. d (1971) ("a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there").[14] Here, although Massachusetts has an interest in holding GE accountable *355 for its conduct, the injury took place in Maine and involved a Maine resident. These latter contacts reduce the comparative weight of Massachusetts' above-noted interest vis-à-vis Maine's interest in providing reasonable compensation for the wrongful death of a Maine resident injured at his workplace in Maine. Further, Burleigh's beneficiary is herself a longtime Maine resident.
As to the fourth contact, plaintiff submits that the relationship between the parties is centered in Massachusetts. (Docket Entry # 170, p. 8). Relying on state court cases in Texas and Washington, she contends that the relationship centers around the wrongful conduct of GE in Massachusetts that caused the injury, namely, the defective manufacturing and selling of asbestos and asbestos-containing products as well as the failure to provide adequate instructions and warn foreseeable users of the dangers of exposure to its asbestos-containing products. (Docket Entry # 170, pp. 7-8) (Docket Entry # 134, ¶¶ 28-31, 35, 41). An illustration in the Restatement demonstrates that the plain meaning of the "relationship ... between the parties," Restatement (Second) of Conflict of Laws § 145 (1971) (emphasis added), does not necessarily incorporate a requirement to consider the defendant's causative conduct exclusive of the defendant's interactions with the plaintiff that form the relationship. See id. § 145 cmt. e, ill. 1 (1971). The illustration exemplifies that, even though the wrongful conduct consisting of negligence and the injury took place in one state, i.e., state Y, the parties' relationship was centered in another state, i.e., state X. Id.; see, e.g., Harrigan v. New England Dragway, Inc., Civil Action No. 13-10132-JCB, 2014 WL 12589625, at *5 (D. Mass. Jan. 2, 2014) ("relationship between the parties is centered on Dylan's participation in motocross activities at Dragway's MX101 track"); Ogburn-Sisneros v. Fresenius Med. Care Holdings, Inc., 2013-05050, 2015 WL 6437773, at *3 (Mass. Super. Oct. 19, 2015) (products liability claims involving failure to warn in which parties' relationship centered in Colorado "given that the only connection between Fresenius and the decedent was GranuFlo, which was administered during the decedent's dialysis treatment in Colorado" notwithstanding manufacture of "GranuFlo in Ohio and Texas"). Finally, in a failure to warn and product design defect case involving an injured plaintiff, the parties may lack any "prexisting relationship." La Plante v. Am. Honda Motor Co., Inc., 27 F.3d 731, 741-42 (1st Cir. 1994) ; see also Restatement (Second) of Conflict of Laws § 145 (1971) (factor in choice-of-law analysis is place where the relationship, "if any," of the parties is centered).
In the case at bar, Burleigh worked at the shipyard in Maine and recalls working on GE turbines. Although Burleigh did not know Tidd, the relationship between Burleigh and GE centered around his work on GE products for two decades at the shipyard. On balance, the fourth contact favors the application of Maine law. In sum, the contacts in section 145(2) weigh heavily in favor of Maine.
Overall, section 146 requires considering whether a state other than Maine, i.e., the place where the injury occurred, has a more significant relationship under the principles in section six with respect to the occurrence and the parties vis-à-vis the particular issue. Restatement (Second) of Conflict of Laws § 146 (1971). The analysis entails considering the interests of Maine and Massachusetts "on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and of the particular issue." Id. § 146 cmt. c; accord Restatement (Second) of Conflict of Laws § 145 cmt. c (1971) ("interest of a state in having its tort rule applied" to *356 determine "a particular issue will depend upon the purpose sought to be achieved by that rule and by the relation of the state to the occurrence and the parties"). The "principles in section six," id. § 146, similarly include the "policies of other interested states and the relative interests of those states in the determination of the particular issue." Id. § 6(2)(c).
Plaintiff argues that the absence of a cap on punitive damages, one among several issues here, see, e.g., Robidoux v. Muholland, 642 F.3d at 27 (determining choice of law and stating that, "the issue here pertains to the application of workers' compensation immunity rules"), evidences Massachusetts' interest in punishing and deterring malicious conduct. (Docket Entry # 170, p. 16). She correctly points out that, if the purpose of the tort law involved "is to punish the tortfeasor and thus to deter others from following his example, there is better reason to say that the state where the conduct occurred is the state of dominant interest." Restatement (Second) of Conflict of Laws § 146(2) cmt. e (1971).
The absence of a cap on the recovery of punitive damages in the Massachusetts wrongful death statute undeniably serves the purposes of condemnation and deterrence. See Aleo v. SLB Toys USA, Inc., 466 Mass. 398, 995 N.E.2d 740, 754 & n.19 (2013) ("statute ... does not set a maximum award. We have stated that the purposes of punitive damages include 'condemnation and deterrence' " and " 'there is nothing wrong with making it very expensive to kill people' "); see also Santos v. Lumbermens Mut. Cas. Co., 408 Mass. 70, 556 N.E.2d 983, 990 (1990) (" 'purposes underlying the allowance of punitive damages ... are punishment of the defendant and deterrence of future wrongdoing' ") (citing Mass. Gen. Laws ch. 229, § 2 ); Kowalski v. Gagne, 914 F.2d 299, 302 (1st Cir. 1990) (acknowledging "punitive nature of the statute"). The $500,000 limit for punitive damages in the Maine wrongful death statute, in turn, prevents a limitless recovery. See generally Tuttle v. Raymond, 494 A.2d at 1361 (rejecting imposition of punitive damages for reckless conduct to avoid, in part, allowing " 'limitless imposition of punitive damages' ").
The purpose for the provision in Maine's punitive damages statute that restricts actionable conduct to malice rather than gross negligence is also deterrence and condemnation of reprehensible conduct. See Tuttle v. Raymond, 494 A.2d at 1361. More specifically, the reason for limiting the misconduct to malicious activity is because expanding the actionable conduct lessens "and dulls the potentially keen edge of the [punitive damages] doctrine as an effective deterrent of truly reprehensible conduct." Id. The purpose of Maine's punitive damages law therefore reinforces the need for deterrence by limiting the conduct to a defined and precise category of misconduct. Id. Maine's imposition of a clear and convincing standard of proof fosters a similar purpose of avoiding a loose assessment of punitive damages in light of their serious potential consequences. See id. at 1363 ("although punitive damages serve an important function in our legal system, they can be onerous when loosely assessed" and their "potential consequences ... warrant a requirement that the plaintiff present proof greater than a mere preponderance of the evidence"); see also Batchelder v. Realty Resources Hosp., LLC, 914 A.2d 1116, 1124 (Me. 2007) (purpose of higher standard is to "avoid[ ] an overbroad application of an extreme remedy for egregious cases").
Because the misconduct of applying asbestos-containing gaskets to turbines and the decision not to warn workers at the shipyard of the dangers posed by asbestos occurred in Massachusetts, the deterrent *357 and condemnation purposes of the unlimited recovery in the Massachusetts statute are well served thereby strengthening Massachusetts' interest in regulating the conduct of its resident defendant. See Restatement (Second) of Conflict of Laws § 146 cmt. e (1971). On the other hand, Maine has an interest in protecting its citizens from egregious misconduct, which it deters in an assertedly more effective manner than Massachusetts with a narrower and more precise malice standard in the Maine statute.
Another related and relevant issue is the statutory cap Maine imposes on non-economic, compensatory damages in a wrongful death action. The underlying basis for the cap is "to establish a reasonable limit on the damages in wrongful death cases." Carter v. Williams, Civil Action No. 98-24, 2001 WL 1736582, at *10 (Me. Super. June 19, 2001) (examining prior version that increased statutory limit from $75,000 to $150,000) (emphasis added), aff'd in part, vacated in part, 792 A.2d 1093 (Me. 2002) ; see generally Batchelder v. Realty Resources Hosp., LLC, 914 A.2d at 1121 (malice standard avoids " 'allow[ing] virtually limitless imposition of punitive damages,' " and " 'overextend[ing] the availability of punitive damages' "). The purpose of the absence of a statutory maximum for such compensatory damages under the Massachusetts statute is to redress the loss to the plaintiff. Aleo v. SLB Toys USA, Inc., 995 N.E.2d at 753 (" 'compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct' "); Matsuyama v. Birnbaum, 452 Mass. 1, 890 N.E.2d 819, 835 (2008) ("purpose of the wrongful death statute is 'to compensate a decedent's survivors for the loss of the decedent's life' "). Massachusetts' interest in applying this rule is greatly reduced, however, because Burleigh as well as his widow and beneficiary are not Massachusetts residents and Burleigh's injuries occurred in Maine. Moreover, it would be anomalous for Maine to insist on providing greater benefits to its citizens under another state's law than it provides to its citizens under its own law. See generally Burgio v. McDonnell Douglas, Inc., 747 F.Supp. 865, 872-73 (E.D.N.Y. 1990) ("state's interest is not merely that which will bring its citizens the greatest benefits" and "it would be anomalous for New York to insist on greater benefits for its plaintiffs abroad than it allows them at home") (applying New York law to loss of consortium claim and damages in wrongful death action). On balance, Massachusetts' interest in regulating the conduct of businesses operating in its state and deterring their misconduct is furthered by applying the Massachusetts statute somewhat more than Maine's interest in awarding a reasonable amount to its resident or deterring others is furthered by applying the Maine wrongful death statute. See generally Restatement (Second) of Conflict of Laws § 146 cmt. e (1971).
Having considered the policies of the forum and the interests of Massachusetts and Maine, the remaining factors in section six are either not particularly relevant, neutral, or favor the application of Maine's wrongful death statute. See generally Bushkin Associates, Inc. v. Raytheon Co., 473 N.E.2d at 670 ("borrow[ing] from any of the various lists to help focus our attention on the considerations particularly relevant to the case before us"); accord Robidoux v. Muholland, 642 F.3d at 27 (" '[b]ecause some of the relevant factors are either redundant or not determinative, we focus on considerations particularly relevant to the case' ") (quoting Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 40 (1st Cir. 2008), with brackets omitted). The parties had a justified expectation that *358 Maine law would apply. The injury took place in Maine at a workplace where GE had a longtime presence and where Burleigh worked for more than two decades on, inter alia, GE turbines. Burleigh had no contact with GE products in Massachusetts.
In addition, "the state where the injury occurred will usually be readily ascertainable" thereby fostering "the choice-of-law values of certainty" and predictability. Restatement (Second) of Conflict of Laws § 146 cmt. c (1971). The uniformity of result slightly favors Massachusetts because GE manufactured the turbines and applied the gaskets to the turbines and, as reasoned by plaintiff, presumably sold them in several different states. The uniformity of result, however, is also served by applying the law of the state where the injury occurred. See id. ("rule furthers the choice-of-law values of ... uniformity of result and, since the state where the injury occurred will usually be readily ascertainable, of ease in the determination and application of the applicable law"). The ease in determining Massachusetts or Maine law is neutral inasmuch as the contours of the law in both states is well established.
As a final matter, plaintiff contends that Ristaino v. D.C. Bates Equip. Co., Inc., No. 03-1178, 2004 WL 1171247 (Mass. Super. Ct. May 12, 2004) (" Ristaino"), involves the same facts as the case at bar and warrants the same result, namely, application of Massachusetts law to a non-resident plaintiff injured outside of Massachusetts by a product sold and installed in Massachusetts by a Massachusetts corporation. (Docket Entry # 170). Notwithstanding these similar facts, Ristaino is distinguishable for a number of reasons. First, Ristaino involved applying a statute of limitations under section 142 of the Restatement, which presents a somewhat different legal analysis than section 146. See id. at *1-2 ; Restatement (Second) of Conflict of Laws § 142 (1971) (" section 142"). Section 142 provides that:
under choice of law principles set forth in § 6, the forum State generally will apply its own statute of limitations to permit a claim unless: "(a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence."
Nierman v. Hyatt Corp., 441 Mass. 693, 808 N.E.2d 290, 292 (2004) (quoting section 142 ). The correct focus is " 'on the statute of limitations issue, and not on the underlying tort.' " Id. at 293. Second, the Ristaino court deemed it significant that the Massachusetts resident defendant defended the Ristainos' first lawsuit brought in New Jersey on a jurisdictional basis that it lacked minimum contacts with New Jersey and the second lawsuit brought in Massachusetts on the basis that New Jersey 's statute of limitations applied. Ristaino, 2004 WL 1171247, at *1, 3. Such circumstances do not exist in the case at bar. Third, the absence of a New Jersey forum appeared to strengthen Massachusetts' interest in providing a forum for persons injured by the conduct of its resident defendant. See id. at *3. Here, plaintiff has an alternative forum for a wrongful death claim by filing an action in her own state. Fourth, unlike GE which had a longstanding connection to the shipyard in Maine, the resident defendant in Ristaino installed a winch on a truck, "delivered the truck to Mass. Electric in Boston[,]" and thereafter had no "involvement with the truck or with the New Jersey construction project on which Mr. Ristaino was injured" when his hand became entangled in the winch. Id. at *1.
*359 In sum, although the purposes served by the two laws gives this court pause, on balance Massachusetts does not have a more significant relationship than Maine to the occurrence and the parties under the principles in section six with respect to the amount of non-economic compensatory and punitive wrongful death damages; the burden of proof in a wrongful death action; and the standard of conduct required to recover punitive damages in a wrongful death action.
III. Choice of Massachusetts or Maine Law (Contribution)
The remaining joint and several liability issues relative to contribution implicate the apportionment of liability and amount of damages between the remaining defendants (GE, Crane, and Warren) and potentially the settling defendants, particularly in the event Maine law applies. See Me. Rev. Stat. Ann. tit. 14, § 156 ; cf. Shantigar Found. v. Bear Mt. Builders, 804 N.E.2d at 332-334 & n.12 (citing, inter alia, Me. Rev. Stat. Ann. tit. 14, § 156 ). GE, Crane, and Warren seek to apply Maine law. Plaintiff does not address or discuss the joint and several liability issues relative to contribution.[15] She therefore waives any opposition to GE's argument to apply Maine law to the contribution issues. See Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) ("district court was 'free to disregard' the state law argument that was not developed in Coons's brief").
Section 173 of the Restatement dictates that section 145"determines whether one tortfeasor has a right of contribution or indemnity against another tortfeasor." Restatement (Second) of Conflict of Laws § 173 (1971) (" section 173"). The rule applies to settling tortfeasors. See id., § 173 cmt. a (law selected under section "145 determines whether contribution can successfully be sought against a joint tortfeasor who has been given a release by the plaintiff"). Contacts consisting of the place of the injury and the domicile, residence, and workplace in Maine create the justified expectation that Maine law would apply. Certainty, predictability, and uniformity are well served by applying the law of the place of the injury. As discussed previously, the contacts in section 145 favor the application of Maine law.
In Massachusetts, contribution "is designed equitably to distribute damages among all those liable in tort for the same offense." Berube v. City of Northampton, 413 Mass. 635, 602 N.E.2d 560, 562 (1992) (discussing Massachusetts General Laws chapter 231, section one); McGrath v. Stanley, 397 Mass. 775, 493 N.E.2d 832, 835 (1986) ("contribution statute is aimed at eliminating" unfairness of one tortfeasor bearing disproportionate share of a plaintiff's recovery). In Maine, contribution serves a similar purpose of "ensur[ing] fairness between joint tortfeasors whose negligence caused a third party harm." Estate of Dresser v. Maine Medical Ctr., 960 A.2d 1205, 1207 (Me. 2008). Massachusetts thus has a greater interest than Maine in applying its contribution laws to GE because the company has its principal place of business in Massachusetts. The facts regarding the location of the manufacturing, design, and sale by Crane and Warren of their products; GE's application, if any, of those products to the steam turbines GE manufactured in Massachusetts and shipped to Maine; and Burleigh's use of Crane and Warren products at the shipyard, however, are not well developed.
At this juncture, in light of the weight of the section 145(2) contacts and considering *360 the interests of the two states in applying their respective law, Maine appears to have the more significant relationship with the parties and the occurrence than Massachusetts.[16] As urged by the remaining defendants, this court therefore concludes that Maine law applies to the contribution issues at this point in the proceedings.
CONCLUSION
In accordance with the foregoing discussion, the motion to apply Maine law (Docket Entry # 161) is ALLOWED.

Plaintiff and Burleigh initially filed this action in Massachusetts Superior Court (Middlesex County) prior to Burleigh's death. Thereafter, GE filed a timely notice of removal to this court, see 28 U.S.C. § 1446(b)(1), on the basis that it was acting under the direction of a federal officer at the shipyard when it constructed and repaired the marine steam turbines in compliance with Navy specifications and it has a colorable defense based on federal law. See 28 U.S.C. § 1442(a)(1).

Although not cited by the parties, section 175 of the Restatement applies the same rule in section 146 to wrongful death actions. First, the language of section 175 tracks the language of section 146. Second, the comments to section 175 cross reference sections 145 and 146, including the comments applicable to when the conduct and the injury occur in different states. See, e.g., Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 450 N.E.2d 581, 586 n.10 (1983). In fact, the first comment in section 175 unequivocally states that, "the law applicable to wrongful death is selected by the same principles as control the law applicable to personal injuries in general (see § 146 )." Restatement (Second) of Conflict of Laws § 175 cmt. a (1971). Accordingly, it is not necessary to address section 175 separately from section 146.

Citing the above two sources and Watkins v. Omni Life Science, Inc., 692 F.Supp.2d 170 (D. Mass. 2010) ("Watkins"), plaintiff overstates Massachusetts' interest in regulating the conduct of resident defendants as "strong." (Docket Entry # 170, pp. 9-10). Watkins is distinguishable because the case concerned a putative class action. Defendant Omni Life Science, Inc. manufactured and designed the defective product, a replacement hip, in Massachusetts and the named plaintiffs were Oklahoma residents who underwent their hip replacement surgeries in Oklahoma. Id. at 174. Recognizing, as does this court, Massachusetts' interest in regulating the conduct of businesses operating under its laws, id. at 175, the court found that the interest trumped "any interest that Oklahoma might have because, "[i]f this case were to achieve class action status, some 1,500 class members representing all fifty states would be affected" and, "among this geographically diverse group, Massachusetts is the only state that would have a substantive tie to all of the class members." Id. This case does not involve a putative class action with class members scattered across the United States. Rather, it involves the estate of a decedent with strong, longstanding ties to Maine who worked on products that GE shipped for an extended time period to the shipyard in Maine or to a Navy storage facility for use on a submarine at the shipyard.

See footnote 11.

As facts develop, however, Massachusetts' interest vis-à-vis Maine's interest may override the weight of the forgoing contacts and factors that favor the application of Maine law such that the trial judge may deem it more appropriate to apply Massachusetts law.